M. F. BELL et al., Appellees, v. I. L. DIESEM et al.
(EMMA J. BROWN, Interpleader), Appellants.

No. 16,943.

SYLLABUS BY THE COURT.

1. TAX DEED — Inconsistent Recitals — Clerical Error — Valid.
Where a tax deed which had been of record more than five
years contained inconsistent recitals as to the steps taken by
the officers, giving the date of the order authorizing the ex-
ecution of the tax-sale certificate as later than the dates of
the payment by the purchaser, the execution of the certificate
by the county treasurer, and the assignment of the certificate
by the county clerk, all of which were done in pursuance of
the order, and where it fairly appeared from all the language
of the instrument that the date of the order, as recited
therein, was a clerical error, and that all the steps mentioned
were taken on the same day, the tax deed should be held to
be valid.

2. MORTGAGE—Foreclosure—Judgment—Sale—No Sheriff's Deed
—Equitable Title. When a mortgage on land is regularly
foreclosed and a sale is made under the judgment to a pur-
chaser, being duly confirmed by the court, such purchaser
acquires the full equitable title to the land although a sheriff's
deed is not executed and delivered to him. While the legal
title remains in the mortgagor until the sheriff's deed is
executed it is held in trust for the purchaser and the record
of the foreclosure proceedings is constructive notice of the
equitable title acquired by the purchaser at the foreclosure
sale.

3. ——— Same. The fact that a long time elapsed after the
sale and confirmation without taking out a sheriff's deed
does not, of itself, deprive the purchaser, or those holding
under him, of their interest in the land nor prevent them
from obtaining such deed.

4. PURCHASER PENDENTE LITE—Bound by Judgment. One who
purchases an interest in property which is involved in liti-
gation takes it subject to the judgment that may be rendered
therein, and is as conclusively bound by the result as if he
had been made a party when the action was begun.

5. ——— Same. The lis pendens, as to such purchaser, is not
affected by the filing of an amended petition which does not
change the cause of action set forth in the original petition.

Bell v. Diesem.

Appeal from Finney district court. Opinion filed February 10, 1912. Affirmed as to lots 1 and 3. Reversed as to lot 2.

*Albert Hoskinson,* and *R. W. Hoskinson,* for appellants I. L. Diesem and Maggie Diesem.

*Milton Brown,* for appellants Emma J. Brown and Milton Brown; *W. B. Lowrance,* of counsel.

*Fred J. Evans,* for appellee M. F. Bell.

The opinion of the court was delivered by

JOHNSTON, C. J.:   The rights of contending parties in lots one, two and three, of block 37, in Garden City, were determined in the judgments sought to be reviewed here. All conceded that on April 1, 1887, the title to these lots was in the Garden City Real Estate Exchange. On that day a mortgage on the lots was executed by the Garden City Real Estate Exchange to Evaline Dunn for $4666.60, and shortly afterwards that mortgage was assigned to J. S. McMaster. The mortgagor having failed to make payments when due McMaster brought an action of foreclosure on July 27, 1888, and all parties who had an interest in the property were made defendants. Contracts for the sale of the lots had been made by the mortgagor to W. H. Fant, R. L. Davidson and E. E. Moulder, subject to the mortgage, and these parties were brought into the case. On March 3, 1890, McMaster recovered a judgment for the mortgage debt and also foreclosing the mortgage and directing the sale of the lots. On May 22, 1890, a sale was made under the judgment to J. S. McMaster, and on July 24, 1890, the court confirmed the sale and directed the sheriff to execute a deed to McMaster. Although the sheriff entered a charge for the execution of a deed the evidence in the record fails to show the delivery of such a deed. On January 6, 1906, McMaster died, and subsequently his heirs made a number of

transfers and assignments of their interests in the lots.

Each lot will be separately considered, and, first, as to the transfers and ownership of lot 1. There was, as we have seen, a contract to convey this lot to Fant, Davidson and Moulder, but it was made subject to the Dunn mortgage. In 1906, long after their interests had been foreclosed and ended by the foreclosure proceedings, in which they were parties, quitclaims deeds were executed by them conveying their interests in the lot to I. L. Diesem. In 1907 the wife and daughter of J. S. McMaster, who were his only heirs, conveyed their interest in the lot to Emma J. Brown and in this action she claims to have paramount title. It appears that the lot was sold to Finney county in 1892 for the taxes of 1891, and that on March 10, 1896, a tax-sale certificate was executed and assigned to H. F. Mason for $20.07 in pursuance of a compromise and order made by the board of county commissioners. Mason conveyed the land to I. L. Diesem on December 29, 1905. Another tax deed was issued in 1902, conveying lot 1 to I. L. Diesem, but it was held to be invalid. The Mason tax deed was upheld by the trial court and the title adjudged to be in Diesem.

In behalf of Emma J. Brown it is contended that this tax deed is void on its face for the reason that there was no authority in the county treasurer to execute the certificate to Mason when it was executed. The claim is that the certificate was executed and assigned three days before the authority was given by the county commissioners, and it is contended that such a flaw can not be overlooked even when the deed is not challenged until more than five years after it is recorded. The tax deed contained the usual recitals that the lot was subject to taxation, that it was offered for sale, and that there being no bidders it was bid off

Bell v. Diesem.

for the county for the amount due thereon, that it had remained unredeemed for more than three years without any offers to purchase the same, and it then provided that:

"And whereas, the Board of County Commissioners of said County of Finney did, on the 13th day of March, A. D. 1896, by resolution of that date, appearing of record at page —— of the record of said Board, permit and authorize the County Treasurer of said county to execute and the County Clerk of said county to assign a tax-sale certificate of and for said described real property to H. F. Mason at and for the sum of Twenty 07-100 Dollars, which said sum was then and there, on the 10 day of March, A. D. 1896, paid to said Treasurer by said H. F. Mason; and whereas, said Treasurer did, on the 10 day of March, A. D. 1896, execute a tax-sale certificate of and for said described real estate, and said County Clerk did, on the 10 day of March, A. D. 1896, duly assign the same, and all the right, title and interests of the said county in and to said property, to said H. F. Mason; and whereas, the period of six months has elapsed since such assignment was made, and neither the owner of said property, his agent or attorney, has offered to redeem the same:" etc.

This was followed by the granting clause, reciting that for the consideration of $20.07, and for the further sum of $4.93 for the taxes of 1895, the property was conveyed.

There is inconsistency in the recitals of the instrument as to the times the various steps were taken. The recital that the order of compromise, directing the county treasurer to execute a tax-sale certificate to Mason for $20.07, was made on March 13 is clearly inconsistent with the following recitals and is manifestly a clerical error. After reciting the making of the order it is stated that the sum fixed was "then" paid by the purchaser. It appears to have been paid on the day the order was made and in that recital it is stated that it was paid on March 10. Taking all the recitals together, it is obvious that the order of compromise by the

board, the payment by the purchaser, the execution of the certificate by the county treasurer, and the assignment by the county clerk, were all made on the same day. The execution and assignment of the certificate were made in pursuance of the order authorizing these things to be done and necessarily it must have preceded them. There is inconsistency in the dates and consequent ambiguity in the deed. Two theories are suggested by it, one, that the compromise was later than the action of the treasurer and clerk, the other, that the compromise occurred on the same day but before the execution and assignment of the certificate. Which of these views should be adopted? It is the general rule that an interpretation consistent with validity should be adopted in preference to one that will overthrow. After the tax deed has been recorded more than five years all reasonable presumptions and inferences are to be indulged in its favor. The instrument is to be construed as a whole, and when fairly and reasonably interpreted it is clear that the execution and assignment of the certificate were made under and in pursuance of an order previously made by the board and that the date, March 13, was a clerical error. Under numerous decisions a mistaken date in one recital, which is cured and made certain by other recitals in line with validity, will not overthrow a five-year-old tax deed. (*Haynes v. Heller*, 12 Kan. 381; *Gow v. Blackman*, 78 Kan. 489, 96 Pac. 799; *Downer v. Schmidt*, 85 Kan. 513, 117 Pac. 1013; *Gibson v. Jackson*, ante, p. 38, 119 Pac. 378; *Hoffman v. Woodward*, ante, p. 81, 119 Pac. 712.)

The judgment as to lot 1 is, therefore, affirmed.

The action for the recovery of lot 2 was begun by M. F. Bell against I. L. Diesem. Bell claimed possession under a quitclaim deed from Davidson executed on December 20, 1905. Davidson held under a conveyance from the Garden City Real Estate Exchange

Bell v. Diesem.

dated May 7, 1888, but taken subject to the Dunn mortgage which was afterwards foreclosed. In the foreclosure action, to which he was a party, he set up his interest, and by the judgment rendered therein he was divested of the interest or title which he claimed or held in the lot. Diesem claimed under a tax deed executed September 5, 1902, and Emma J. Brown interpleaded and claimed under a deed from the McMaster heirs executed March 26, 1909. The court held that, notwithstanding the foreclosure proceeding which barred Davidson, the sale to McMaster, the confirmation of the sale, and the transfers of the McMaster heirs to Emma J. Brown, Bell, the grantee of Davidson, was the owner of the lot, and that Diesem's tax deed was incurably void but that he was entitled to a lien on the lot for the taxes and interest which he had paid.

No complaint is made of this ruling by Diesem and no appeal has been taken by him. But Emma J. Brown does appeal, insisting that under the facts, about which there is no dispute, she was entitled to a recovery of the lot, subject to the tax lien of Diesem. The judgment proceeds on the theory that the foreclosure of the Dunn mortgage was ineffectual; that McMaster acquired no title or interest by the judicial sale which the court afterwards confirmed, for the reason that a sheriff's deed was not issued and recorded. If McMaster acquired an interest or an equitable title to the lot by the sale and confirmation, which had not been subsequently lost, his heirs had a right to convey it to Emma J. Brown. It is true that the sale and confirmation did not convey the legal title; but the confirmation of the sale was an adjudication that the sale was valid, and it determined the rights of the parties and vested in McMaster the full equitable title and the right to a deed from the sheriff. In *Mills v. Ralston,* 10 Kan. 206, it was decided that:

"A sale in chancery is not complete till it is con

24—86 KAN.

firmed, but when confirmed it passes to the purchaser all the interest the defendant possessed and the decree ordered sold." (Syl. ¶ 3.)

The person holding the equitable title is entitled, on demand, to a deed from the officer conveying the legal title. The fact that a considerable length of time elapsed after confirmation of the sale and before the formal transfer does not invalidate the sale nor necessarily overthrow the equitable title of the purchaser. In *Knox v. Doty,* 81 Kan. 138, 105 Pac. 437, a sheriff's sale of real estate was made, and thereafter, but before confirmation, it was conveyed by the former owners. Twelve years after the sale the grantee of the purchaser obtained a confirmation of the sale and the execution of the sheriff's deed, and it was held that the deed operated to convey to the purchaser all the interest which the defendant had when the lien was acquired and the sale made. It was further held that the deed related back to the origin of the lien, and that the party who purchased from the former owner, before confirmation, took the conveyance of the land charged with notice of the record of the action in which the sale was ordered.

Another case was where there was a foreclosure of a mortgage and a sale thereunder in 1889, but there was no confirmation of the sale, nor was there a deed issued to the purchaser until 1907. In 1894 the purchaser at the judicial sale sold the land to the plaintiff in the case, but the sale was not confirmed, nor was the sheriff's deed issued, until about eighteen years after the sale. Under some claim of right the defendant obtained possession of the land, and in the action he insisted that the grantee of the purchaser at the judicial sale was entitled to nothing, as there was no authority in the court to confirm the sale or to authorize the execution of a deed after the lapse of so long a time. It was held, however, following *Knox v. Doty,* supra, that the court had authority to confirm the sale, thus up-

holding the equitable title of the purchaser, and that the sheriff's deed conveyed the title held by the defendant in the case.   (*Menke v. Spaulding,* 81 Kan. 904, 106 Pac. 1009.)

So here the foreclosure of the Dunn mortgage, together with the sale and confirmation, extinguished the Davidson interest, and the judgment rendered is equally binding and conclusive as against Bell, his grantee. Davidson was a party to the foreclosure action and was effectually barred and his title or interest cut off by the judgment, and therefore he had nothing substantial to convey to Bell in 1905 when his quitclaim deed was executed.   The naked title remained, it is true, but it was held in trust for the purchaser, and he is entitled to a deed, as we have seen, upon demand.   In a somewhat similar case in the federal court there had been a foreclosure of a mortgage, a sale and a confirmation, but no deed was ever executed, and the mortgagor undertook to convey the land to another, and it was held:

"The judicial confirmation of a foreclosure sale vests in the purchaser the full equitable right to the mortgaged premises, whether any deed is executed and delivered to him or not.   The colorable legal title which, until the recording of a foreclosure deed, the mortgagor retains, is held by him, and those claiming under him, merely in trust for the purchaser and those claiming under him.   The foreclosure record is constructive notice, to all claiming under the mortgagor, of the outstanding equities vested in the purchaser at such foreclosure sale."   (*Stang v. Redden,* 28 Fed. 11, syl.)

While no deed appears to have been executed, Bell was chargeable with notice of the foreclosure proceedings, and is deemed to have taken her title knowing that the full equitable title was in McMaster and that the legal title was held in trust for him or those holding under him.   Although a long time had elapsed after the sale, the purchaser or those holding under him are not thereby barred or deemed to have lost their title, but they may now procure the issuance of a foreclosure

deed. A reference is made to section 495 of the civil code of 1909, and there is a claim that the failure to put a deed on record cut off the rights of the purchaser. Whatever may be the true interpretation of this provision, it can not be made applicable here. It is one of the sections of the redemption law, which was enacted long after the execution of the Dunn mortgage, which was the foundation of the foreclosure and sale in question, and it has no operation as to mortgages previously executed.

Appellant Emma J. Brown is entitled to recover lot 2, subject to a tax lien of Diesem, and to that extent the judgment will be modified.

As to lot 3 the judgment must be affirmed. The action was brought by the McMaster heirs against Jennie L. Trout, who obtained a conveyance of the lot from John L. Trout. Milton Brown obtained a conveyance from the Trouts, and was made a party to the action. J. S. McMaster, who held the equitable title under the foreclosure proceedings, conveyed the lot to Alvina Beck, who in turn conveyed it to Maggie Diesem. The controversy was, therefore, between Brown and Diesem, and the court found that Diesem is the owner and entitled to the possession. It is contended that the Trouts were not bound or affected by the judgment of foreclosure or the subsequent proceedings, for the reason that Trout was not made a party to the action. Trout purchased the lot from the Garden City Real Estate Exchange on August 4, 1888, and the foreclosure action was begun on July 27, 1888, the summons being served on the exchange the following day.

It is a general rule that one not a party to an order is not bound by the judgment; but one who acquires property which is involved in litigation takes and holds it subject to any judgment that may be entered therein, and is as conclusively bound by the judgment as if he had been made a party when the action was begun. Now Trout was not made a defendant in the case when

Bell v. Diesem.

the action was commenced, but there was no occasion or right to bring him into the case, as he had no interest in the mortgaged property at the time.   He acquired his interest eight days after the suit was instituted, and summons had been served on his grantor, and was, therefore, a purchaser *pendente lite*.  (Civ. Code, § 86.) It is contended, however, that an amended petition was filed by the plaintiff after the purchase by Trout, and that as he was not then brought into the case he was not affected by the judgment.   If the cause of action had been changed or new causes added, there might be some ground for the contention.   Here there was no substantial change in the subject of litigation. There were some slight changes in the petition, and other parties were served and brought into the case, but the object of the litigation throughout was the foreclosure of the mortgage, and it was fully set out in the original petition, and the property involved was accurately described.   The cause of action was the same in the amended petition as in the original, and the amendments, such as they were, related back to the filing of the original, and Trout must, therefore, be held to be a purchaser *pendente lite*.  (*Myers v. Jones,* 61 Kan. 191, 59 Pac. 275; 25 Cyc. 1473.)   Brown held under Trout, and hence was not entitled to recover lot 3, and the decision as to it will be upheld.

The judgment of the district court as to lots 1 and 3 is affirmed; and as to lot 2 it is reversed, with the direction that Emma J. Brown be adjudged to recover it subject to the tax lien of Diesem.

MASON, J., not sitting.