No. 24,658.

FANNIE E. McCARTNEY and CLARA P. HANSON, *Appellants*, v.
C. D. ROBBINS, *Appellee*.

SYLLABUS BY THE COURT.

1. WILL—*Devise of Land for Life—Remainder to Life Tenant's Heirs—Wife
of Life Tenant Took Contingent Remainder.* A will devised land for life,
remainder to the life tenant's heirs. *Held,* the wife of the life tenant, living
at the time the will became operative, took a contingent remainder, depend-
ing on survival of her husband.

2. SAME—*Wife of Life Tenant Had Mortgageable Interest.* After the will be-
came operative, the husband and wife gave a mortgage on the land, which
was foreclosed. *Held,* the wife had a mortgageable interest in the land
which was conveyed to the purchaser at the foreclosure sale by the sheriff's
deed consummating the foreclosure proceedings.

3. SAME—*Mortgage Foreclosed—Remainder Vested in Grantee in Sheriff's
Deed.* The wife survived her husband. *Held,* the remainder vested in the
successors in interest of the grantee in the sheriff's deed.

Appeal from Woodson district court; ROBERT E. CULLISON, judge. Opinion
filed July 7, 1923. Affirmed.

*F. J. Oyler, G. M. Lamer, Wallace H. Anderson,* all of Iola, and *M. C.
Rogers,* of Fulton, Ill., for the appellants.

*G. H. Lamb,* and *W. E. Hogueland,* both of Yates Center, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one of ejectment. The plaintiffs
were devisees of remainders after a life estate. Fannie E. McCart-
ney and the life tenant joined in a mortgage which was foreclosed.
The defendant claims under the purchaser at the foreclosure sale.
Clara P. Hanson recovered. Fannie E. McCartney was defeated,
and appeals.

Martha McCartney, owner of a certain section 17, died, leaving
a will which devised the south half of the section to her son in fee.
The will continued as follows:

"The north half of said section 17 I give to my said son, George L. Mc-
Cartney, during his natural life, and at his death to his heirs, as the statute
in such case provides."

The testatrix died in 1878. At that time Fannie E. McCartney
was the wife of George S. McCartney. Clara P. Hanson is their
daughter. The record does not show whether she was living when

the testatrix died. It is not material. George S. McCartney died in May, 1920. In April, 1886, Fannie E. McCartney and George S. McCartney mortgaged the land to Levi Robbins, to secure payment of a promissory note. What, if any, interest did Fannie E. McCartney have in the land at that time?

The rule in Shelley's case has been abolished in this state, as applied to wills. (Gen. Stat. 1915, § 11808.) Therefore, George S. McCartney was given a life estate only, and his heirs were given the remainder in fee simple. The gift of the remainder was an independent gift to heirs as original takers. What kind of a remainder did Fannie E. McCartney take?

When the will took effect, Fannie E. McCartney was wife of the life tenant, not heir. Whether she would be her husband's heir, and consequently whether she would take anything under the will, depended on surviving her husband. If she had died before her husband, and he had remarried, the second wife, surviving her husband, would have been his heir, and would have taken under the will. Therefore the remainder was contingent.

"That the limitation of an estate by way of remainder in favor of an unascertained person or persons necessarily creates a contingent and not a vested remainder, is recognized by the most authoritative writers, and by numerous decisions. . . .

"A very common instance of a remainder contingent because of uncertainty in the remainderman is presented by the limitation of a remainder to the heirs, or to the heirs of the body, of a living person named, in which case the heirs cannot be ascertained till such person's death, on the principle that there can be no heir to a living person, as expressed in the maxim, *Nemo est haeres viventis.* So soon as the person named dies, his heirs are ascertainable, and, provided there is no further condition precedent, the remainder immediately vests." (1 Tiffany on Real Property, 2d ed., pp. 486, 488.)

The defendant cites the case of *Bunting v. Speek*, 41 Kan. 424, 21 Pac. 288. In that case the will read as follows:

"I will and bequeath to my beloved wife, Nancy Bunting, after all my just debts and liabilities are paid, all the rest of my estate, real and personal, to have and to hold them, together with all rights and privileges thereto belonging, during her lifetime, and then they are to descend to my legal heirs." (p. 426.)

It was held the remainder to heirs of the testator was vested. The moment the testator died his heirs were known. In this instance, identity of the heirs of the life tenant could not be determined when the testator died, but was ascertainable only at death of the life tenant.

In the commissioner's opinion in *Bunting v. Speek* occurs the following:

"We shall adopt Blackstone's classification and definitions of estates in remainder, both vested and contingent. They are approved by Kent; are more easily understood than those of other text-writers; and better suited to the condition of real property in this state." (p. 432.)

Referring to Blackstone's chapter on Expectant Estates, Chancellor Kent said:

"The doctrine of remainders, whether vested or contingent, is there most ably digested, and reduced to a few simple elementary principles. Its merits have never been duly acknowledged by subsequent writers on the subject. It far surpasses them all, if we take into one combined view, its perspicuity, simplicity, comprehension, compactness, neatness, accuracy, and admirable precision." (4 Kent's Commentaries, Revised ed. 1889, p. 208, note "b.")

Strangely enough, the great chancellor said the New York statute accurately and fully expressed the definition of a vested remainder, although the statute, perhaps undesignedly, changed the common law, and he stated the distinction between a vested and a contingent remainder in terms which placed him at variance with Blackstone. In trying to apply Blackstone's and Kent's rules as though they are identical, many judges besides the commissioner have brought confusion to the law. For observations on the opinion in *Bunting v. Speek*, see *Kikpatrick v. Kirkpatick*, 112 Kan. 314, 319, ff., 211 Pac. 146.

Concerning the New York statute, Professor Gray said:

"It is doubtful whether this piece of legislative definition was intended to change the common law; but the courts have decided, and it would seem correctly, that it has done so. And it is conceived that the adoption of this view necessitates the decisions of the court of appeals, which at first appear rather startling, that since the abolition of the rule in *Shelley's Case* a remainder to heirs, after a life estate to the ancestor, is vested." (Gray, Rule Against Perpetuities, 3d ed., p. 83.)

In 1 Tiffany on Real Property, section 137 and note 79, we find the following:

"The distinction between a vested and a contingent remainder lies in the fact that a vested remainder is an estate while a contingent remainder is merely the possibility or prospect of an estate. Whether, in any particular case, a remainder is contingent or vested depends on the construction of the language used, as creating a mere possibility of an estate, or as creating an estate. . . .

"In such jurisdictions as have adopted legislation which precludes the failure of a contingent remainder (*post,* § 140) one in favor of whom a remainder is limited in fee simple upon a condition precedent which is certain to be

satisfied, such as some person's death (Fearne's third class) has more than a possibility of an estate; he has a certainty of an estate, but he has no estate."

Therefore, according to this writer, we have estate, certainty of estate but no estate, and mere possibility of estate. In the case of *In re Twaddell*, 110 Fed. 145, the court said:

"A contingent remainder is none the less a remainder because limited to persons not *in esse*. But such a limitation *ex vi termini* excludes the alienability or transmissibility of the remainder so long as it remains contingent. If land be devised to one for life and at his death in fee to such of his children as shall survive him, there can be, before his death occurs, no remainderman *in esse* having capacity to take. In such a case it would seem that the existence of remaindermen cannot be dissociated from their capacity to take, and that, as such capacity cannot exist before their ascertainment by the death of the first taker, they cannot be regarded as *in esse* before that event, so far as the alienability or transmissibility of any interest or title under the limitation is concerned." (p. 149.)

Whatever Fannie E. McCartney had belongs in Tiffany's lowest grade. Could she accomplish anything by executing an instrument in form a mortgage of it, or was the instrument which she signed, acknowledged and delivered as a real-estate mortgage, void in law?

Let us begin with our feet on the ground. Assume Fannie E. McCartney was of strong constitution, in good health, and had a life expectancy of many years. Assume her husband was on his deathbed, suffering from a fatal disease, which had progressed until he was in a state of coma. Under such circumstances, she would bear a relation to the land which, as things go in this world, would amount to a good deal more than a mere possibility of estate. In fact, there would be only a mere possibility, and that so slight as to be negligible, that she would not have an estate in the land. From a business standpoint, her contingent remainder would have value the practical equivalent of the value of an estate in fee simple.

Go back to the beginning of her husband's last illness. The possibility she would not become vested with an estate would be somewhat greater, but she would still be practically certain of becoming owner in fee simple. Assume they desired to borrow money for a necessary purpose. The life estate would be valueless as security, because it was certain presently to end. Could she lawfully join with her husband in using the land as security for a loan, or would she be so lacking in interest, so nonexistent, that the law would condemn her act as utterly void?

Consider the situation which actually existed. Thirty-four years before her husband's death she signed a note for $1,200 with her husband, and they gave a mortgage on the land to secure its payment, which was duly foreclosed. In the fullness of years, the possibility she would own the land became a certainty. At that time she had already enjoyed benefit of the certainty. If the mortgage was void, why was it void? The answer comes faintly from afar.

In ancient times in England, when the whole social organization rested on land-holding in return for service, it was necessary there should always be a tenant of the freehold to whom the lord might look for his feudal dues. A contingent remainder might leave a hiatus in the seizin, and such a thing as a contingent remainder could not be tolerated. However, men insisted on creating contingent remainders, and so about the time of Henry VI the law was obliged to recognize them. It did so, however, on condition there should be no hiatus, and until the contingency occurred, the contingent remainder was regarded as nothing at all. Of course, a nonentity was not alienable *inter vivos*. Is that a good reason?

"As a modern and rationalistic rule the complete inalienability of contingent remainders is somewhat incongruous. Modern statutes which have made the contingent remainder and other contingent interests alienable indicate that there is to-day little or no public policy in favor of the absolute inalienability of contingent remainders insisted upon by the feudal land law. The same is even more true of the rule of destructibility of contingent remainders. All recognize this as a survival of the feudal system. For the purpose of administering these two feudal survivals—the rule of absolute inalienability *inter vivos* of contingent remainders and the rule of destructibility—we have had to cling to the *feudal* distinction between vested and contingent remainders, even though it does not satisfy modern rationalistic conceptions." (Kales Estates Future Interests, 2d ed., § 328.)

In this state, when the common law ceases to satisfy modern rationalistic conceptions it no longer remains in force. (Gen. Stat. 1915, § 11829; *Cooper v. Seaverns*, 81 Kan. 267, 105 Pac. 509.)

From the death of the testatrix onward, Fannie E. McCartney was a person who would take if the life estate came to an end. She might be divorced from her husband, but the law does not anticipate such an event. She was his heir apparent, and the one contingency to be fulfilled was survival of her husband. The killing of remaindermen by the federal court in the case cited was verbal only. The benefit to her of sustaining the relation to the land which she bore was valuable. She could profitably employ that benefit as property.

To deny it the nature of property is to make theory dominant over fact. Parliament in England and the legislatures of some of the states have conformed legal theory to the fact and social need by making the benefit alienable. The courts of Massachusetts and other states have accomplished the same result without any statute. Numerous Massachusetts cases are reviewed by Justice, now Chief Justice Rugg, in the opinion in *Clarke v. Fay,* 205 Mass. 228; 27 L. R. A., n. s., 454.

Correct terminology is a matter of importance. Any word chosen from the present vocabulary of the law to describe what the will gave Fannie E. McCartney will have implications which may lead to logomachy. "Interest" is probably as expressive and as unobjectionable as any, and the court is satisfied she had an interest in the land, in the sense in which the legislature has employed that term in various statutes:

"The word 'land,' and the phrases 'real estate' and 'real property,' include lands, tenements and hereditaments, and all rights thereto and interest therein, equitable as well as legal.

"Any person of full age and sound mind and memory, having an interest in real or personal property of any description whatever, may give and devise the same to any person by last will and testament lawfully executed.

"Conveyances of land, or of any other estate or interest therein, may be made by deed, executed by any person having authority to convey the same." (Gen. Stat. 1915, § 10973, subdiv. 8; §§ 11752, 2052.)

The history of the statute relating to conveyances, which it will be observed distinguishes between "estate" and "interest," is given in *Miller v. Miller,* 91 Kan. 1, 136 Pac. 953. In the opinion it was said:

"The words, 'conveyances of land,' mean, of course, the land itself in fee simple absolute. The words, 'any other estate or interest therein,' include estates of freehold and less than freehold, of inheritance and not of inheritance, absolute and limited, present and future, vested and contingent, and any other kind a grantor may choose to invent, consistent, of course, with public policy." (p. 4.)

The public policy referred to was meant to include the rule against perpetuities.

The statute relating to executions reads as follows:

"Lands, tenements, goods and chattels, not exempt by law, shall be subject to the payment of debts, and shall be liable to be taken on execution and sold, as hereinafter provided." (Gen. Stat. 1915, § 7344.)

The statutory definition of land given above applies to this section, and the court has consistently held that equitable interests

McCartney v. Robbins.

are subject to levy and sale under ordinary execution. In the case of *Poole v. French*, 71 Kan. 391, 80 Pac. 997, it was said:

"It is evidently the policy of our statute to permit the appropriation of any valuable interest in non-exempt land which a debtor may have to the payment of his debts. So it is permitted to take by attachment and sell as upon execution any such interest, be the same legal or equitable. (Code, § 222; *Shanks v. Simon*, 57 Kan. 385.) There may be found difficulty in some cases in ascertaining what such interest is, its extent and value, but such difficulty does not abrogate the right or divert the policy." (p. 401.)

The result is, during existence of her husband's life estate, Fannie E. McCartney had an interest in the land which she could convey. Being fully alienable, the interest could be mortgaged, and a mortgage of it could be foreclosed in the usual way.

The note and mortgage given by the McCartneys were signed, first by the wife and then by the husband, and on the face of the papers she was as much principal as he. The mortgage not only purported to convey the land, which was identified by government description, but also contained a warranty of title to the mortgagee, his heirs and assigns. The defendant is in possession under the proceedings foreclosing the mortgage. Fannie E. McCartney claims the procedings took such form that none but her husband's interest was sold and conveyed. Conceding the claim, the judgment of the district court was correct. She is not entitled to eject the defendant. He is a mortgagee in possession, and her only remedy is by action to redeem. This ends the case. Since, however, the subject has been presented to the court, it is proper to say the claim is not well founded.

Throughout the foreclosure proceedings the interest of George S. McCartney was stated to be a life estate. The petition prayed however, that the interest of the defendants be ordered sold. The judgment of the court was that the interest of the defendants be sold. The order of sale recited the judgment and directed the sheriff to sell the land. The notice of sale recited the judgment and stated the sheriff would sell the land. The sheriff returned that he had sold the land. The court approved and confirmed the sale and ordered the sheriff to make the purchaser a deed "therefor." The sheriff's deed did not correctly recite the proceedings. Nevertheless, on confirmation of the sale title passed to the purchaser (*Bell v. Diesem*, 86 Kan. 364, 121 Pac. 335), who was entitled to a proper deed. When the error was discovered the present defendant applied

for a corrected deed, as he was privileged to do, and pursuant to order of court a deed in proper form was supplied.

The sheriff's deed conveyed to the grantee the interest of Fannie E. McCartney in the land. When the life estate terminated, the fee which otherwise would have vested in her as a purchaser under the will, vested in the grantee, or those in privity with him.

The judgment of the district court is affirmed.