## In re NOSSMAN et al.

### No. 4470.

District Court, D. Kansas, Second Division.

Feb. 26, 1938.

O. R. Stites, of Emporia, Kan., for petitioner.

William E. Keith, of Wichita, Kan., for debtor.

McElhenny & Gault, of Topeka, Kan., and William E. Lemke, of Washington, D. C., amici curiae.

HOPKINS, District Judge.

The issue presented here arises out of a bankruptcy proceeding under the Frazier-Lemke Act, Bankr.Act § 75, as amended, 11 U.S.C.A. § 203.

The John Hancock Mutual Life Insurance Company held a mortgage executed by Jessie Nossman, a farmer, which among other things, provided that default in payment of taxes by the mortgagor and default in interest would mature the mortgage. The debtor became delinquent in payment of taxes for the year 1929 and has been delinquent during subsequent years. He also became delinquent in the payment of interest due on such mortgage October 1, 1932. In due time the insurance company began foreclosure proceedings in the state court. Judgment was rendered against Nossman October 4, 1935. Sale was had of the land covered by the mortgage, sale confirmed November 13, 1935, and certificate of purchase issued to the holder of the mortgage.

After final decree of confirmation, in fact not until May 8, 1937, Nossman filed his petition for relief under the Frazier-Lemke Act and scheduled as part of his assets the land covered by this mortgage. The insurance company has filed its petition addressed to this court, praying that the land be

released from the bankruptcy proceedings for the reason that it cannot properly be considered to be an asset of the farmer, and that there is no debtor-creditor relationship existing between the insurance company and the farmer. Nossman has filed answer to the petition of the insurance company and the matter stands submitted for decision upon the pleadings, the facts and admissions made thereunder.

The identical question of law presented (res adjudicata) was considered and determined by this court in the Hageman Case, 10 F.Supp. 716, 717. The opinion (not reported) was prepared by Hon. Earl Hatcher, referee, was adopted by this court, and has been the rule in this district since its entry December 31, 1934. It was therein held that, when a controversy has been fully adjudicated in the state court, this court has no jurisdiction to reconsider and determine the issues there presented, and that the provisions of the Frazier-Lemke Act do not apply.

It was there said:

"The Trevett, Mattis and Baker Company held a mortgage on 240 acres of land belonging to the debtor. Mortgage was foreclosed (in state court) and in April, 1933 the sale was confirmed and a certificate of purchase issued to the mortgagee. The period of redemption was fixed at eighteen months from the 24th day of April, 1933. The certificate of purchase was later duly assigned to the Rhode Island Hospital Trust Company, the movant in this case.

"Ten days before the expiration of the redemption period, the debtor filed his petition for relief under section 75 of the Bankruptcy Act, as amended [11 U.S.C.A. § 203].

"In his petition the debtor scheduled the Trust Company as a creditor and listed the real estate in question as an asset, and asked for a composition or an extension of time in which to pay his debts.

"The Trust Company in support of its motion contends that it is not a creditor and that neither party has a claim against the other. It further contends that any right which it may have in the land is separate and apart from the estate which may be claimed by the debtor, and asks therefore to be excused from the debtor's proceedings.
* * *

"Able counsel have advised us of the broad general powers of Congress over bankruptcy under the Federal constitution. We approach this question mindful that the constitutional grant of power to Congress to legislate on the subject of bankruptcy is general in its terms, paramount and unrestricted. However, bankruptcy can reach only the debtor or bankrupt, his property and his creditors. It cannot reach out and bring into the proceedings property of a third person in which the bankrupt has no interest, neither can it bring in as creditors third parties who have no claim against the bankrupt or his property. If I may use an extreme example—Congress could not under the guise of bankruptcy legislation pass an act for the equal distribution of the nation's wealth, nor bring in the property of third parties because it would be beneficial in the administration of the estate. The legislation must and does confine itself to the relationship of debtor and creditor, and the property of the debtor. The relationship and the property right must be determined from the laws of the state under which they accrued. Congress in passing bankruptcy legislation must give consideration to property rights as they exist, at the time the proceedings are instituted, under the state laws and final decrees of state courts.

"There is very little if any uniformity in the mortgage laws of the various states. This is particularly true of the redemption period. Some states have been quite liberal in fixing a period for redemption. Other states have granted little, if any at all. The states in meeting the problem have given consideration to their industries, their credit necessities, and their local economic situation. This is as it should be. Any attempt to pass uniform laws on the subject either by bankruptcy legislation or other means would be unwise.

"We must therefore look to the laws of the State of Kansas as interpreted by its Supreme Court in determining this question.

"Under the mortgage foreclosure laws of the State of Kansas as interpreted by its Supreme Court, is the holder of a certificate of purchase a creditor, or has he a claim against the mortgagor's property?

"Under the Kansas law when mortgaged property is sold under foreclosure it is sold at public auction to the highest bidder. The purchaser may be a stranger to all the proceedings before the sale. He is not necessarily interested in the amount of the debt nor the personal obligation of the mortgagor. He is simply purchasing an interest in property which he knows will under the final decree of the court ripen into a fee

title, subject only to one contingency—redemption by the mortgagor or some subrogated creditor.

"The Trust Company in this case, the assignee of the certificate of purchase, has no right as a creditor which it can enforce against the mortgagor. The holder of the equity of redemption has no legal obligation to redeem. The note and mortgage has been merged in judgment and the judgment satisfied by the sale of the property.

"The Kansas Supreme Court has definitely passed upon these propositions. In Kueker v. Murphy, 86 Kan. 332 [120 P. 362], it was said:

" 'The purpose of the redemption law is to prevent the sacrifice of the debtor's land, make it discharge his debt to the extent of its value, and to give other creditors a chance to bid its full value so as to secure something on their claims. Throughout the statute the purpose is evident that a sale of the land shall operate as a complete discharge of the lien on it and that the redemptioner shall not be required to pay the judgment under which the sale is made.'

"There being no obligation of any character on the part of the holder of the right of redemption or the holder of the certificate of purchase, the relationship of debtor and creditor does not exist.

"We come next to the property interests which have accrued by virtue of the foreclosure sale. * * *

"The interest of the holder of the certificate of purchase and holder of the right to redeem has been defined by the Kansas Supreme Court in Bell v. Diesem, 86 Kan. 364, [121 P. 335.] * * *

"The holder of the certificate of purchase has something more than a lien. It has an absolute right to the property sold unless redeemed. After the sale the debtor had nothing remaining but a defeasible title certain to be defeated unless redeemed within the period fixed, and the Bankruptcy Court can take no greater title than that held by the debtor. * * *

"The confirmation of a sale in a mortgage foreclosure has been definitely held to be a final and binding judgment in Kansas. In the case of Moore v. McPherson, 106 Kan. 268 [187 P. 884], the court held:

" 'When a mortgage on real property is foreclosed, and the property sold, and the sale confirmed, such confirmation cannot be vacated nor the sale set aside after the term at which the judgment of confirmation was rendered, except in accordance with the Civil Code. * * *

" 'In a mortgage foreclosure, the sale of the mortgaged property is a judicial sale and the confirmation is a final and binding judgment of the court.'

"The decree of confirmation has the same finality as other decrees and can only be vacated for the reasons set out in the code which are applicable to all decrees (R.S. 66-3007), none of which appear in this case.

"It necessarily follows that the Rhode Island Hospital Trust Company is not a creditor of the debtor. The property right which it holds in the land is separate and apart from that held by the debtor. Its property right has been fixed by a final decree of the state court which the court of bankruptcy is powerless to disturb. The State Court may proceed with the enforcement of its final decree."

The rule announced in the Hageman Case has been consistently followed in this district since the entry of that judgment December 31, 1934. Many Frazier-Lemke cases have been before the court, practically all involving the question of res adjudicata because of mortgage foreclosures, the proceedings of which have been finally adjudicated in the state court. In all such cases, however, this court has given consideration to the equities arising between the debtor and creditor, has recognized the spirit of the Frazier-Lemke Act enacted to help farmers during the emergency created by the general depression. In practically all of such cases the debtor has been delinquent five or more years before the entry of any judgment in this court.

Two decisions of this court involving the Frazier-Lemke Act have been presented to the Tenth Circuit Court of Appeals, Wilcons v. Penn Mutual Life Insurance Company, 91 F.2d 417, and Heldstab v. Equitable Assurance Society, 91 F.2d 655. In the Wilcons Case the farmer had been delinquent in payment of taxes since 1931, interest since August 1, 1932, and failed to keep the buildings insured. In the Heldstab Case the farmer has been delinquent in taxes since 1929 and interest accruing subsequent to October 1, 1931. The controversy in both cases had been finally adjudicated in the state court; that is, there had been mortgage foreclosures, sale of the land and final decree of confirmation entered. In the hearing and determination of the issues

presented in both those cases, I gave consideration to the facts, not only that the controversies had been finally adjudicated in the state court and were res adjudicata here, but that the debtor in each case had been delinquent in his contract for such a length of time that he was entitled to no further delay under either the letter or the spirit of the Frazier-Lemke law. In both cases last above mentioned, the Circuit Court of Appeals determined certain procedural aspects and reversed the cases without stating its views on what this court had considered the controlling questions presented. I have been of the opinion that, when an issue has been determined by another court of competent jurisdiction and is res adjudicata, technical matters of procedure in this court should be given no valid effect; that, if the question of res adjudicata was presented in this court, this court was bound to act thereon regardless of whether the question was raised by a pleading designated a motion or by what under the Frazier-Lemke Act might be termed a formal petition.

█ It was my opinion that the facts presented not only did not warrant equitable action by this court in favor of the alleged debtors, but that the issues had been finally adjudicated in another (state) court, and that therefore this court was without authority or jurisdiction to act in the premises.

█ Any proper way of presenting the jurisdictional question should be sufficient. Indeed, it has appeared to me that, whenever the court discovers it is without jurisdiction of a controversy, it should so determine, even if the litigants themselves have not raised the question.

Being without a controlling precedent from the Circuit Court of Appeals, and in view of important amendments to the act since the Hageman decision, this court has been asked to re-examine the subject.

The Honorable William Lemke, joint author of the act, has filed, as a friend of the court, an extensive brief in the case now under consideration, discussing at length the purpose and intention of the Congress in passing the act and reviewing in detail the decisions interpreting it. Interested attorneys have been invited to answer Mr. Lemke's brief, and the matter has now been thoroughly briefed and reconsidered.

For reasons hereinafter stated, I remain of the opinion that Congress cannot by its enactments take away or enlarge rights of property which have been finally vested by a judgment of the state courts.

On behalf of the farmer it is contended that the Congress intended the act to apply to property sold at foreclosure sale. This may be conceded. The act clearly so states. Subdivision (n), as amended, 11 U.S.C.A. § 203(n), reads: "In all cases where, at the time of filing the petition, the period of redemption has not or had not expired, * * * or where the sale has not or had not been confirmed, * * * the period of redemption shall be extended or the confirmation of sale withheld."

The debates in Congress further sustain the contention. It does not follow, however, that Congress intended to alter well-established rules of Kansas real property law or that it has the power so to do.

█ Under Kansas law, after confirmation of sheriff's sale, the debtor retains legal title to the land subject, however, not to a contractual lien as prior to confirmation, but to an equitable estate created by decree of the state court. The certificate holder has no lien, no contract to enforce. He has a vested estate in land fixed by judgment of the state court. The Kansas law makes this clear distinction between a mortgagee's lien and the certificate holder's equitable estate. Bell v. Diesem, 86 Kan. 364, 121 P. 335; McCartney v. Robbins, 114 Kan. 141, 147, 217 P. 311.

In Bell v. Diesem, supra, it was held: "When a mortgage on land is regularly foreclosed and a sale is made under the judgment to a purchaser, being duly confirmed by the court, such purchaser acquires the full equitable title to the land, although a sheriff's deed is not executed and delivered to him. While the legal title remains in the mortgagor until the sheriff's deed is executed, it is held in trust for the purchaser, and the record of the foreclosure proceedings is constructive notice of the equitable title acquired by the purchaser at the foreclosure sale." Syl. 2.

█ The certificate holder's right to a sheriff's deed is conditional alone upon redemption not being made by the mortgagor. The right to redeem is a property right, may be assigned or mortgaged (McFall v. Ford, 133 Kan. 593, 607, 1 P.2d 273), and in a debtor proceeding under section 75 may be scheduled by the farmer as an asset.

█ Application of the Lemke Act in Kansas is necessarily affected by this well-

established rule of real property law. Before confirmation of sale, the relationship between mortgagee and mortgagor is that of creditor and debtor; it is contractual, and as such may be affected by bankruptcy. After confirmation, the relationship of debtor and creditor ceases to exist; an estate in land is created by decree of the state court; rights become vested and may not be enlarged, or stricken down, by exercise of the bankruptcy power. This was recognized by the Tenth Circuit Court of Appeals prior to the enactment of section 75. In Garber v. Bankers' Mortgage Company, D.C., 27 F. 2d 609, 612, it was said: "The right to redeem is lost, however, if not exercised, in the time provided by statute. Bankruptcy does not extend the period of redemption. It could not prolong the period, for the purchaser at the sale, not a party to the bankruptcy, has a vested right in the matter."

The Supreme Court of Kansas refused to apply the moratoriums granted by the Kansas Legislature to extend a period of redemption which had been made final by judgment of the state court. In Kansas City Life Insurance Co. v. Anthony, 142 Kan. 670, 671, 52 P.2d 1208, 104 A.L.R. 364, it was held: "A judgment rendered by a competent court of record in a mortgage foreclosure action, fixing the amount of the indebtedness, rendering judgment against the defendant therefor, ordering a sheriff's sale of the real property encumbered by the mortgage, and fixing the proper period of redemption under the law then existing, is res adjudicata when no appeal is taken therefrom, and cannot be annulled or set aside by a subsequent act of the Legislature, even on the theory of the existence of an emergency, especially when such emergency is not temporary but is a continuation of four consecutive emergency declarations accumulating a total extension period of nearly four years." Syl.

In Phoenix Joint Stock Land Bank v. Conrad, 143 Kan. 359, 55 P.2d 347, 348, it was said: "The decree of confirmation was a judgment of a competent court and became res adjudicata just the same as one fixing the amount of the indebtedness and rendering judgment against the defendant therefor."

■ The Congress is bound to give effect to the same principles, notwithstanding its acts under the bankruptcy clause. "The bankruptcy power, like the other great substantive powers of Congress, is subject to

the Fifth Amendment." Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 863, 79 L.Ed. 1593, 97 A.L.R. 1106.

Amicus curiæ quotes the comprehensive wording of subsection (n), as amended, and argues there is no room for construction, the act is either good or bad, and the Supreme Court has upheld it in its new and present form in Wright v. Vinton Branch Bank, 300 U.S. 440, 57 S.Ct. 556, 559, 81 L.Ed. 736, 112 A.L.R. 1455. It is argued that decision not only settled the question of constitutionality but by references therein to the Lowmon Case, Lafayette Life Ins. Co. v. Lowmon, 7 Cir., 79 F.2d 887, and the Pamp Case, United States Nat. Bank v. Pamp, 8 Cir., 83 F.2d 493, determined the question before us now of the power of Congress to extend the redemption period after confirmation of sale by the state court. Careful reading of the Supreme Court opinion discloses the error in the contention. The Supreme Court mentioned the Lowmon and Pamp Cases in pointing out the conflict in holdings in the different circuits. The court discusses the act section by section and holds that it is constitutional. But, it said: "While we must decide whether the challenged sub-section is constitutional, we refrain from deciding questions suggested which may arise later in the course of its administration."

Clearly the court held the act good on its face, but did not pass upon the effect of attempted application of the act to alter vested property rights, owned, in some instances, by persons who are strangers to the mortgagor-mortgagee relationship, and, as here, to encompass property no longer owned by the debtor.

Following the decision of the Supreme Court upholding the act, the Seventh circuit which had rendered the decision in the Lowmon Case, supra, again considered the question and, in Wright v. Union Central Ins. Co., 7 Cir., 91 F.2d 894, 896, had this to say:

"Confusion has arisen in this Circuit, however, with respect to the extent of the decision of the Supreme Court in Wright v. Vinton Branch of Mountain Trust Bank of Roanoke, 300 U.S. 440, 57 S.Ct. 556, 558, 81 L.Ed. 736 [112 A.L.R. 1455]. It is contended by appellant that that case, in effect, overruled the Lowmon Case and sustained subsection (s) of section 75 [11 U.S. C.A. § 203(s)] as to all of its provisions.

We disclaim any intention of not strictly following the rulings of the Supreme Court, but we can not accept appellant's interpretation of the extent of that decision. We do not understand that the question in the Lowmon Case was before the Supreme Court in the Wright Case. In the latter case there had been no sale and the period of redemption had not begun. In the Lowmon Case there had been a sale and the period of redemption was running, in fact it expired two weeks after the petition was filed. * * *

"In all other cases cited, and in the Wright Case, the sales had not been made and they were still dealing with remedies for the protection of the title to property against foreclosure or sale, while that title was yet in the debtor. There was a sale in the Pamp Case, but it had not been confirmed, and from the opinion we assume that was required under the laws of Nebraska. Under the Indiana laws, however, no confirmation by the court of a sheriff's sale or deed for land sold under execution is required. In the Lowmon Case and in this case the court was not dealing with remedies against foreclosure and sale, but with property rights which came into existence when the sales were made by virtue of the laws of Indiana. The notes and mortgages were not in existence; they were merged into the decree of foreclosure and were cancelled. * * *

"It seems to us that if Congress has the power under the constitution to prolong or in any way limit the time of redemption as fixed by the laws of Indiana, for the purpose of increasing the estate of the debtor, or increasing his rights in property to which he has no title, or for any other purpose, then it would have the same right for the same purpose to alter the laws of descent of that state, or to permit federal construction of her transfer statutes contrary to the views of her own courts. We have never thought that such power was contemplated by the federal constitution, even under its broadest construction."

There is another feature of the act which to my mind has an important bearing upon the usefulness of the act in Kansas. The act is declared to be an emergency measure, and "if in the judgment of the court such emergency ceases to exist in its locality, then the court, in its discretion, may shorten the stay of proceedings herein provided for and proceed to liquidate the estate." Bankr.Act § 75(s) (6), as amended, 11 U.S.C.A. § 203(s) (6).

Another portion of the act provides "If * * * the debtor at any time * * * is unable to refinance himself within three years," the court may close the proceedings by selling the property. Section 75(s) (3), as amended, 11 U.S.C.A. § 203(s) (3). Other provisions require payment of semiannual rental and impose upon the farmer other burdens during the extended period contemplated by the act.

Under Kansas law, a farmer is entitled to a redemption period of 18 months. The right cannot be waived. During the period the farmer is entitled to possession and all earnings from the land. The redemption law bestows upon the Kansas farmer benefits equal to a full extension under the Lemke Act to a farmer in a state whose laws afford no time in which to redeem from judicial sale. The result is that protracted delinquency by a mortgagor would compel this court in exercise of sound discretion to grant petitions for leave to proceed in the state court whether there has been a sale and confirmation or not. The very generous provisions of the Kansas law invest the Kansas farmer with benefits equal to or greater than those contemplated by the Frazier-Lemke Act, and without the ordinary results of bankruptcy.

If I were to disregard the conclusive effect of the judgments of the state courts and take the view that in a proper case I have the power to enlarge the property interest of the debtor and extend the period of redemption, I would nevertheless be bound to continue to weigh the equities in determining whether to grant such extension. In the cases now coming before me, I do not recall one wherein the facts would warrant more than the 18 months' period of redemption and other benefits of the state law, especially in view of the fact that 3 or 4 years ordinarily elapse after the farmer's delinquency before foreclosure proceedings.

The John Hancock Mutual Life Insurance Company, petitioner here, is entitled to a decree releasing from these debtor proceedings the land involved.

An appropriate decree may be drawn.