SAMUEL MARSHALL v. H. D. SHEPARD AND J. J. PLAYFORD.

1. FACTS *Showing no Liability for Damages.* P. owns and is in actual possession of and resides upon a certain piece of land. It is sold to S. at sheriff's sale, and a sheriff's deed is executed to S. for the premises. Before the deed is filed for record, and before M. has any notice of the deed, or of S.'s claim to the land, he, M., in good faith, and at the instance and for the benefit of P., who is still in the actual possession of the property, removes a house therefrom. *Held,* That M. is not liable to S. for damages in removing said house.

2. REGISTRY ACT; *Lis Pendens; Liens; Notice.* The registry act, the doctrine of relation as of deeds, back to some prior period of time; the doctrine of *lis pendens;* questions as to liens and equities, and of what notice persons who are not parties to the suit are required to take of judicial proceedings; and actions for injuries by holders of equitable titles, and defenses thereto, discussed, in the opinion.

### *Error from Osage District Court.*

AT the April Term, 1876, of the district court, *Shepard* and another, as plaintiffs, had judgment against defendant *Marshall*, who brings the case here. The nature of the action, and the facts, appear in the opinion.

*James Rogers*, and *E. M. Sanford*, for plaintiff in error.

*Ellis Lewis*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by H. D. Shepard and J. J. Playford against Samuel Marshall and others, for alleged damages to certain real estate, caused by the removal of a house therefrom. Judgment having been rendered against Marshall, he now brings the case to this court for review.

It seems from the evidence that Nancy Parks was the original owner of the property, but that Shepard and Playford held a sheriff's deed therefor. This deed was executed April 27, 1874, but was not filed for record at that time.

21 — 23 KAS.

Mrs. Parks was still in the possession of the property when said supposed injuries occurred, and the plaintiffs were never in the possession thereof. She resided in the house up to the very commencement of the removal thereof. About April 29, 1874, Mrs. Parks employed a man by the name of Barrett to remove said house, and Barrett engaged Marshall to assist him. On the morning of April 30, 1874, Barrett and Marshall commenced work. They had removed the kitchen, and were raising up the main portion of the house for the purpose of removal, when C. S. Playford, an agent of the plaintiffs, notified them that the property belonged to the plaintiffs, and warned them not to do anything further. They then quit work and left the premises, taking away with them all their tools, implements, etc., except some poles which Playford requested them to leave. This was about 8 or 9 o'clock in the morning of said 30th day of April. At 3 o'clock that afternoon the plaintiffs filed their said sheriff's deed for record in the register's office. Afterward, some other persons removed said house, but it does not seem that either Barrett or Marshall had anything to do with it. Certainly Marshall did not.

The principal rulings of the court below, of which the plaintiff in error (Marshall) now complains, are the instructions given by the court to the jury. The instructions read as follows:

"1. GENTLEMEN OF THE JURY: This is an action for the purpose of recovering damages which the plaintiffs allege they have sustained by reason of the defendants having removed from the premises in Osage county a certain house and kitchen situate thereon. The defendants deny all of the allegations in the plaintiffs' bill of particulars. This denial on the part of the defendants throws the burden of proof on the plaintiffs, and in order for them to recover they must satisfy you, by a preponderance of the evidence, of such right.

"2. You are the sole judges of the evidence and of the facts proved, and the credibility of the witnesses, and of the weight to be given to their testimony.

"3. The ownership of the property in question being in the plaintiffs, and that the defendant is liable for some dam-

ages you may consider as proved by the evidence, and therefore the only question for you to determine is, as to the amount of the damage.

"4. If you believe from the evidence that the defendant procured certain persons to assist him in the removal of the house in question, then the defendant will be liable for all the damages done to said property by the defendant or by said persons while in his employ, whether said defendant Marshall was personally present all the time or not.

"5. If you believe from the evidence that the defendant was simply employed by another party to remove the house in controversy, and that as soon as he ascertained or was notified that the said property was owned by plaintiffs he ceased to participate in anywise in said removal, then the defendant will be liable only for the amount of damages done to said property while he was so assisting in said removal.

"6. The plaintiffs' measure of damages is the actual amount of the injury which they sustained by reason of the removal of the property in question, as shown by the evidence.

"7. It is not necessary, in order for the plaintiffs to recover in this action, that notice be given to defendant of their ownership of said property."

The plaintiff in error claims that all of these instructions, after the first and second, are erroneous; and we are inclined to think that the plaintiff in error is correct. The fourth and fifth, however, are erroneous only because they are misleading. The others are erroneous because they are given upon the erroneous theory that it makes no difference whether Marshall had any notice of the plaintiffs' interest in the property, or not—that in any event he is liable; and the sixth instruction says substantially that he is liable for all the damages, although he did not in any manner participate in the final removal of the main building.

It was not shown that prior to said supposed injuries either Mrs. Parks, or Barrett, or Marshall, or indeed anyone else, except the parties to the deed, ever had any knowledge thereof; nor was it shown that prior to that time either Barrett or Marshall ever had any notice of the plaintiffs' claim of interest in the property, and the deed was not filed at that time

for record in the register's office, and was therefore void as to Barrett and Marshall. (See § 21 of the act concerning conveyances, Gen. Stat., p. 187; Comp. Laws of 1879, p. 212.) It must be remembered that Mrs. Parks, and not the plaintiffs, was in possession of the property at the time that these supposed injuries occurred, and hence all presumptions of ownership from possession are in favor of Mrs. Parks and those acting under her, and not in favor of the plaintiffs, and her possession was actual. Marshall was not a trespasser, nor a mere wrong-doer. He went upon the property in good faith, at the instance of the person in possession, and in whom, according to the records of the county, the title was vested. Under the facts of this case, as they are now represented to us, we do not think that Marshall is liable to Shepard and Playford in any manner or for any amount. This is upon the theory that, as between these parties, said unrecorded sheriff's deed must be considered as void, and that the land attempted to be conveyed by it, and upon which said house was situated, still belonged in legal contemplation to Mrs. Parks. That the registry acts apply with all their force and vigor to sheriffs' deeds as well as to other deeds, we suppose will hardly be questioned. (See the latter part of § 459 of the Civil Code, in connection with § 21 of the conveyance act.) Mr. Rorer, in his work on Judicial Sales, says that they do. (Rorer on Judicial Sales, §§ 833–835.) And in the case of *Harrison v. Hollis*, 2 Nott & McCord (S. C.) 578, it is held that "where a purchaser at a sheriff's sale does not record his title, it will not affect the title of a subsequent purchaser at sheriff's sale without notice of the first purchaser's title." And in the case of *Jackson v. Terry*, 13 Johns. (N. Y.) 471, it is held that "a sheriff's deed for lands in the military tract must be recorded, and if after land has been sold on execution, and a conveyance made by the sheriff, and before such conveyance is recorded, the former proprietor conveys it to a *bona fide* purchaser for a valuable consideration, who has his deed first recorded, such subsequent purchaser will gain a priority." These are pretty strong cases — much stronger

than are needed for the purposes of this case—and yet we think that they state the law correctly, except in some rare cases where the doctrines of relation and of *lis pendens* require a different rule. A sheriff's deed always relates back to some prior and antecedent time. It relates back, when recorded, to the day of its execution, to the day of the sale, to the time of the levy, to the rendition of the judgment; and where the judgment is rendered for the enforcement of some preëxisting lien, it relates back to the origin of such lien. But it does not relate back to such preëxisting lien so as to make every person, except the lien-holder, a trespasser who uses the property after the creation of such lien. It merely relates back so as to cut off all intervening equities, incumbrances and conveyances, and so as to give to the purchaser a clear and unincumbered title to the property then in existence and to which the original lien attached. It never relates back for the purpose of doing wrong or injustice, but only for the purpose of doing right and justice. It is an equitable fiction, adopted for the purpose of preserving and enforcing liens and equities. But it preserves and enforces only such liens and equities as are known, or such as the law requires shall be taken notice of. As to the doctrine of relation as applied to sheriffs' deeds, see Freeman on Judgments, § 333; *Presnell v. Ramsour*, 8 Ired. (N. C.) 505. All persons are required to take notice of all recorded liens, such as mortgage liens, mechanics' liens, attachment liens, and judgment liens; and they are sometimes required to take notice of the unrecorded equities, from actual facts of which they have had due notice. But no person is bound to take notice of some unrecorded lien of which he knows nothing, or of some secret and unknown equity, undiscoverable by the exercise of reasonable and ordinary diligence. And a sheriff's deed relates back only to known liens and equities, and not to such as are unknown and undiscoverable. The doctrine of *lis pendens* also requires that all persons, whether parties to the suit or not, shall take notice to some extent of judicial proceedings. This doctrine, however, applies only

in cases where the suit is about some specific piece of property, and then only to the extent of preventing a purchaser, *pendente lite*, from acquiring any interest in the thing in litigation, to the prejudice of the adverse party. (Civil Code, § 81; Wade on Notice, ch. 5, §§ 337–377.) And in no case is a person, not a party to the suit, bound to take notice of judicial proceedings further than to prevent him from acquiring an interest in the thing covered by the litigation. And this we suggest with reference to relation and liens, as well as with reference to *lis pendens*. Of course if a person has actual notice of judicial proceedings, that is another thing.

The foundation for the plaintiffs' interest in the property in this case was a statutory lien for lumber. The holder of said lien sued, and obtained judgment against Mrs. Parks, for the amount of the lien. On this judgment an execution was issued, and levied on the property on which this house stood, and the property was sold to the present plaintiffs. By this purchase the plaintiffs obtained an inchoate equitable title to the property. The sale was afterward confirmed by the district court, and by this confirmation the value of their title was enhanced, but still it was only an equitable title. Afterward, the sheriff executed a deed to them for the property, and by such deed their title was still further enhanced. As to all persons who had actual notice of the deed, their title was then complete and perfect, both legal and equitable. (Conveyance act, § 21.) But as to all others, their title was at most only an equitable title. (*Tucker v. Vandermark*, 21 Kas. 263, 269.) But without notice to others, and without possession, their title was really nothing. As to Marshall, for instance, who had no notice of their title or claim, their title was void, and Mrs. Parks owned the property; except, as we have before stated, Marshall could not have purchased the property of Mrs. Parks, and have procured a clear title to it, on account of said liens, and the rule of *lis pendens;* but as we have already stated, the plaintiffs' title, after they procured said deed, was at most, as against Marshall, only an equitable title; and as they found their

claim for damages wholly upon said equitable title, they must be prepared to meet all equitable defenses that may be interposed by Marshall. And we think that the fact that Marshall was not a mere wrong-doer, but that he acted innocently and in good faith, and at the instance of the person who appeared from all the records to be the owner of the property, and who was at the time and had been for years before in the actual possession of the property, was a good, equitable defense. It does not appear that Marshall was in any respect guilty of negligence; but on the other hand, it does appear that the plaintiffs were guilty of negligence in not having their sheriff's deed filed for record sooner. If they had had their sheriff's deed filed for record one day sooner, probably nothing would ever have been done toward moving said house. Now as Marshall was not a wrong-doer, and as between him and the plaintiffs they were the only parties guilty of negligence, they should bear all the loss that occurred through an innocent mistake.

The judgment of the court below will be reversed, and cause remanded for a new trial.

HORTON, C. J., concurring.

BREWER, J., dissenting.