GEORGE S. KNOX, *Appellee,* v. DENNIS D. DOTY,
*Appellant.*

No. 16,116.

### SYLLABUS BY THE COURT.

1. JUDICIAL SALES—*Attachment—Time of Confirmation and Is-
suance of Sheriff's Deed.* Where real estate has been at-
tached in an action for money, and after judgment has been
entered for the plaintiff the land is sold upon an order of
sale to the plaintiff and due return thereof has been made by
the sheriff, such sale may upon application of the plaintiff be
confirmed and a sheriff's deed issued to the purchaser at any
time thereafter, even after the lapse of twelve years, where
no objection by the defendant in the action is or has been
made to the sale or confirmation.

2. —— *Sheriff's Deed — Conveyance of Defendant's Title.*
Where, under the circumstances above stated, a sheriff's deed
has been executed and delivered to the purchaser, it con-
veys all the title possessed by the defendant when the order
of sale was issued.

3. —— *Purchase of Quitclaim Deed from Defendant, before
Confirmation—Notice.* Where in such a case a third party,
after the sale and before the confirmation, takes a quitclaim
deed to the land from the defendant in the action, he will be
charged with notice of the record in such action and will
acquire no interest in the land by such deed.

Appeal from Finney district court; WILLIAM H.
THOMPSON, judge. Opinion filed November 6, 1909.
Reversed.

*W. R. Hopkins,* and *Richard J. Hopkins,* for the ap-
pellant.

*B. F. Stocks, Albert Hoskinson, Ralph W. Hoskinson,*
and *A. M. Harvey,* for the appellee.

The opinion of the court was delivered by

GRAVES, J.: George S. Knox commenced this action
in the district court of Finney county to quiet his title
to the land in controversy. He was in actual posses-
sion and claimed title under a quitclaim deed from

Thanhouser and Smith, who are conceded to have been the former owners. Thanhouser was indebted to the Cosmo Buttermilk Soap Company, and in 1895 it commenced an action against him to recover the amount due on said debt. Smith, who had an interest in the land, was made a party defendant. An attachment was issued at the commencement of such action and levied upon the land in controversy. A judgment was obtained by the plaintiff in that case, and a sale of the attached property was made, the soap company being the purchaser. The sale was made December 10, 1895. On April 17, 1906, Knox obtained a quitclaim deed from Thanhouser and Smith. On April 23, 1907, the defendant, Dennis D. Doty, acquired a quitclaim deed for the same land from the soap company. The sheriff's sale was confirmed May 21, 1907, and a sheriff's deed was immediately executed to the purchaser.

Knox claims that his grantors lost nothing by the attachment proceedings and therefore the quitclaim deed conveyed to him all that his grantors owned before the action was commenced. He insists that title does not pass under a sheriff's sale until after the sale has been confirmed, and that, as he obtained a conveyance before such confirmation, the full title passed to him unaffected by the sheriff's sale. This, however, seems to overlook the effect of the confirmation, which subsequently occurred, and the deed which was issued later. We understand that an order of confirmation finds and adjudicates that all prior steps required by law have been taken. (Gen. Stat. 1901, § 4955; *Mills v. Ralston,* 10 Kan. 206; *Carter v. Hyatt,* 76 Kan. 304; *Watson v. Tromble,* 33 Neb. 450; 24 Cyc. 36; 17 A. & E. Encycl. of L. 993.) A sheriff's deed relates back to the judgment upon which the deed rests, and further, if necessary. (*Marshall v. Shepard,* 23 Kan. 321.) This rule is well stated in the case last cited, as follows:

"A sheriff's deed always relates back to some prior

and antecedent time. It relates back, when recorded, to the day of its execution, to the day of the sale, to the time of the levy, to the rendition of the judgment; and where the judgment is rendered for the enforcement of some preëxisting lien it relates back to the origin of such lien. But it does not relate back to such preëxisting lien so as to make every person except the lienholder a trespasser who uses the property after the creation of such lien. It merely relates back so as to cut off all intervening equities, encumbrances and conveyances, and so as to give to the purchaser a clear and unencumbered title to the property then in existence and to which the original lien attached. It never relates back for the purpose of doing wrong or injustice, but only for the purpose of doing right and justice. It is an equitable fiction, adopted for the purpose of preserving and enforcing liens and equities. But it preserves and enforces only such liens and equities as are known, or such as the law requires shall be taken notice of. As to the doctrine of relation as applied to sheriffs' deeds, see Freeman on Judgments, § 333; *Presnell v. Ramsour*, 8 Ired. (N. C.) 505. All persons are required to take notice of all recorded liens, such as mortgage liens, mechanics' liens, attachment liens, and judgment liens; and they are sometimes required to take notice of the unrecorded equities, from actual facts of which they have had due notice." (Page 325.)

Knox having taken a quitclaim deed only, was warned thereby that there was probably a weakness in the title of his grantors or a deed of general warranty would have been given. This put him upon inquiry, and he was expected to search with diligence for any and all outstanding liens, encumbrances or other equities. The rule relating to this subject is well stated in the case of *Johnson v. Williams*, 37 Kan. 179. It reads:

"We would think that in all cases, however, where a purchaser takes a quitclaim deed he must be presumed to take it with notice of all outstanding equities and interests of which he could by the exercise of any reasonable diligence obtain notice from an examination of all the records affecting the title to the property,

and from all inquiries which he might make of persons in the possession of the property, or of persons paying taxes thereon, or of any person who might, from any record or from any knowledge which the purchaser might have, seemingly have some interest in the property.    In nearly all cases between individuals where land is sold or conveyed, and where there is no doubt about the title, a general warranty deed is given; and it is only in cases where there is a doubt concerning the title that only a quitclaim deed is given or received; hence, when a party takes a quitclaim deed, he knows he is taking a doubtful title and is put upon inquiry as to the title.    The very form of the deed indicates to him that the grantor has doubts concerning the title; and the deed itself is notice to him that he is getting only a doubtful title.    .   .   .    A person who holds real estate by virtue of a quitclaim deed only from his immediate grantor, whether he is a purchaser or not, is not a *bona fide* purchaser with respect to outstanding and adverse equities and interests shown by the records or which are discoverable by the exercise of reasonable diligence in making proper examinations and inquiries." (Pages 182, 183.)

A diligent search would have enabled Knox to ascertain the true condition of the title.    The record in the district court would have shown the suit by the soap company against Thanhouser and Smith.    It would have shown the attachment, judgment, order of sale, and the return of the sheriff that a sale was made to the plaintiff in that action.    This would have been notice that Thanhouser and Smith were no longer the owners of the land.    It would have shown that the soap company had purchased the property and was entitled to an order of confirmation and a sheriff's deed, which when made would give it the full and complete title to the property.    It can not be said, therefore, that Knox was a purchaser in good faith.    He bought with notice and received only such interest in the land as his grantors held.    They held nothing but the bare formal, legal title, which might be extin-

guished at any time by an order of confirmation and the execution of a sheriff's deed.

The fact that the confirmation and the execution of the sheriff's deed were made after Knox obtained his quitclaim deed is immaterial. The confirmation when made finds and adjudicates that all prior proceedings have been regular and in compliance with law.

It is urged here by Knox that the delay of the purchaser in securing a confirmation of the sale amounts to such laches that the confirmation should not have been allowed. If this objection had been urged when the confirmation was applied for it would have been of more force than now, in this collateral proceeding. Laches on account of mere delay is not at all times serious. The delay may not have been negligent; it may have been necessary. The presumption is that this and all other prior acts which furnished a reasonable objection to the confirmation were considered at the time by the court and overruled. The order is an adjudication to that effect. We see no occasion here for the application of the rule of laches for which Knox contends, and there would be none if the question of confirmation were here for consideration. The delay could not have injured the rights of Thanhouser, as he had no substantial interest in the land. There does not appear to be any adequate equitable reason for depriving the soap company of what it acquired by its purchase and reinvesting it in the man who received a valuable consideration for it, or in his grantee, who stands in no better position. There seems to be as great reason to apply the rule of acquiescence or waiver to Thanhouser for permitting so much delay without taking advantage of it by way of objection to the confirmation, or moving to set aside the sale, or otherwise. (17 A. & E. Encycl. of L. 1005.) But in our view these questions were settled by the order of confirmation. Upon the whole case we think the sheriff's deed conveyed the land to the Cosmo Buttermilk Soap

Company, and its deed conveyed it to Doty, who is entitled to the possession of the property.

The judgment of the district court is reversed, with direction to enter judgment in favor of Dennis D. Doty for possession of the property, upon his cross-petition.