(797 P.2d 879)
No. 64,447

In the Matter of the Application of the Small Business
Administration for Exemption from Ad Valorem Taxation
in Meade County, Kansas.

Opinion

filed August 10,. 1990.

*Joe Shepack*, county attorney, for appellant Board of Meade County Commissioners.

*Lee Thompson*, United States attorney, and *Stephen K. Lester*, assistant United States attorney, for appellee Small Business Administration.

*Steven R. Wiechman*, of Topeka, for *amicus curiae* Kansas Association of Counties.

Before ELLIOTT, P.J., DAVIS, J., and WILLIAM M. COOK, District Judge, assigned.

COOK, J.: The Board of County Commissioners of Meade County (County) appeals from the order of the Shawnee County District Court granting the Small Business Administration (SBA) relief from real estate taxes.

The County does not challenge the facts found by the trial court. In a journal entry filed September 29, 1989, the court stated the facts as follows:

"This case represents an appeal by the Small Business Administration, an agency of the United States, from orders on rehearing made by the Board of Tax Appeals of the State of Kansas. The orders of the Board modified its original order granting exemption from, and refund of, certain real estate taxes paid on certain real property held by the Small Business Administration in Meade County, Kansas, from the date of November 12, 1985, to an effective date of November 12, 1986, as requested on original rehearing by Meade County. No one disputes that the Small Business Administration, as an agency of the United States government, is entitled to an exemption from taxation at least from and after November 12, 1986.

"The real estate in question consisted of approximately 156.6 acres. The Small Business Administration held a second mortgage which was foreclosed along with a first mortgage in favor of Travelers Insurance Company by a judgment of the Meade County District Court under date of October 1, 1985, on this parcel and other parcels of which the debtors, Robert C. and Wilma F. Norsworthy, had given mortgages to Travelers Insurance Company among others. The priority of the liens among the mortgagees is not an issue here. A personal judgment on the Small Business Administration's claim in the amount of $60,371.28 as of October 1, 1985, with interest thereafter, was entered against the Norsworthys and foreclosure of the subject realty decreed with the proceeds of the sale of this particular tract to be first applied to the costs of the action and sale, then to payment of taxes and tax liens, if any, then to the judgment of Travelers Insurance Company, then to the judgment of the Small Business Administration, and then others, junior, so enumerated. The period of redemption in the Norsworthys was fixed at 12 months per the governing statute. An order of sale was duly issued October 14, 1985, notice of sale was duly 5 given for November 12,

1985, and on that date the property was sold to the Small Business Administration on its bid of $75,000 which sale was confirmed by order of the Court under the date of November 22, 1985, directing that a certificate of purchase be issued for such sale. Subsequently, the Norsworthys remained in possession during the period of redemption, but did not redeem and on November 12, 1986, a Sheriff's Deed was issued to the Small Business Administration and possession assumed by the Small Business Administration."

The district court held SBA to be immune from payment of the taxes which accrued during the redemption period.

The issue presented in this case is whether an agency of the United States, which bids in and acquires a certificate of purchase from the sheriff in a mortgage foreclosure action, is liable for taxes accruing on the real estate during the redemption period and before the agency receives the sheriff's deed.

There is no dispute in this case as to the County's authority to impose a tax directly on the United States or any agency or instrumentality thereof. A state may not, consistent with the Supremacy Clause, United States Const., art. VI, cl. 2, lay a tax "directly upon the United States." *Mayo v. United States*, 319 U.S. 441, 447, 87 L. Ed. 1504, 63 S. Ct. 1137 (1943). This prohibition applies to ad valorem taxes imposed by a state or county on real estate owned by the United States. *Clallam County v. United States*, 263 U.S. 341, 68 L. Ed. 328, 44 S. Ct. 121 (1923). Kansas law also recognizes the prohibition. K.S.A. 79-201a exempts "[a]ll property belonging exclusively to the United States, except property which congress has expressly declared to be subject to state and local taxation," from all property or ad valorem taxes.

SBA is an agency of the United States and operates under the general direction and control of the President. 15 U.S.C. 633 (1988). It is an integral part of the government mechanism, not merely a separate legal entity. *Small Business Adm'n v. Mc-Clellan*, 364 U.S. 446, 450, 5 L. Ed. 2d 200, 81 S. Ct. 191 (1960). Absent a waiver, SBA stands in the shoes of the United States and is entitled to the same exemption from state and local taxation as is the United States. *United States v. City of Roanoke*, 258 F. Supp. 415 (W.D. Va. 1966).

In *United States v. New Mexico*, 455 U.S. 720, 71 L. Ed. 2d 580, 102 S. Ct. 1373 (1982), the Court recognized the difficulty

that the immunity issue has given the courts through the years. The Court said:

.."With the famous declaration that 'the power to tax involves the power to destroy,' *McCulloch v. Maryland*, 4 Wheat. [U.S.] 316, 431 (1819), Chief Justice Marshall announced for the Court the doctrine of federal immunity from state taxation. In so doing he introduced the Court to what has become a 'much litigated and often confused field,' *United States v. City of Detroit*, 355 U.S. 466, 473 (1958), one that has been marked from the beginning by inconsistent decisions and excessively delicate distinctions." 455 U.S. at 730.

In determining whether a federal agency is immune from state or local taxes, the deciding factor is not whether the tax has an effect on the United States but whether the tax is imposed directly on property owned by the United States. The Court in *United States v. New Mexico* expressed that view as follows:

"We have concluded that the confusing nature of our precedents counsels a return to the underlying constitutional principle. The one constant here, of course, is simple enough to express: a State may not, consistent with the Supremacy Clause, U.S. Const., Art. VI, cl. 2, lay a tax 'directly upon the United States.' . . .

"But the limits on the immunity doctrine are, for present purposes, as significant as the rule itself. Thus, immunity may not be conferred simply because the tax has an effect on the United States, or even because the Federal Government shoulders the entire economic burden of the levy." 455 U.S. at 733-34.

Unquestionably, property owned absolutely in fee simple by the SBA is immune from state or local taxation. *United States v. Roanoke*, 258 F. Supp. 415. For the purpose of immunity, it is not necessary that the federal agency be in possession of the property. Thus, it has been held that both the federal government and its bailee were immune from taxation of machinery owned by the government. *United States v. Allegheny County*, 322 U.S. 174, 189, 88 L. Ed. 1209, 64 S. Ct. 908 (1944). Although it is not necessary for the federal agency to have legal title to the property, immunity must rest on sufficient ownership that it can be said the property was "owned" by the United States. *Rohr Corp. v. San Diego County*, 362 U.S. 628, 4 L. Ed. 2d 1002, 80 S. Ct. 1050 (1960). There, property owned by the Reconstruction Finance Corporation was declared to be surplus property and the War Assets Administration took possession of the property

for purposes of management and disposition. Even though the property was still titled in the Reconstruction Finance Corporation, the Court held:

"[T]he general rule is 'that lands owned by the United States of America or its instrumentalities are immune from state and local taxation.' We think the land here was 'owned' by the United States.

" . . . We believe that the appropriate test would turn on practical ownership of the property rather than the naked legal title." 362 U.S. at 634.

Did the SBA in the instant case acquire sufficient ownership in the property, as a result of being the successful bidder at the sheriff's sale, to justify a finding that it "owned" the property during the redemption period? The answer requires a determination of the nature of the interest acquired by a purchaser of land in a Kansas mortgage foreclosure action before receipt of the sheriff's deed.

Under Kansas law, a mortgage does not create an interest in land. "[T]he mortgagee acquires no estate whatever in the property, either before or after condition broken, but acquires only a lien securing the indebtedness described in the instrument." *Hall v. Goldsworthy*, 136 Kan. 247, 249, 14 P.2d 659 (1932). Thus, Kansas is a "lien theory" jurisdiction rather than a "title theory" jurisdiction. In a "title theory" jurisdiction, the mortgage is viewed as a form of title to property. Conversely, in "lien theory" states, a mortgagee is not entitled to immediate possession of property upon default because the mortgage is merely a lien and not a form of title. *Missouri Valley Investment Co. v. Curtis*, 12 Kan. App. 2d 386, 388, 745 P.2d 683 (1987).

A mortgage foreclosure sale terminates the relationship between mortgagor and mortgagee. The mortgage lien merges into a decree foreclosing it. *Exchange State Bank v. Central Trust Co.*, 127 Kan. 239, 243, 273 P.2d 477 (1929); *Mid Kansas Fed'l Savings & Loan Ass'n v. Zimmer*, 12 Kan. App. 2d 735, 755 P.2d 1352 (1988). Thus, it has been held a purchaser at a sheriff's sale "has rights and interests in the real estate superior to those of a lienholder. He is the equitable owner of the real estate. For all purposes except the right of the defendant owner to redeem, he is the owner of the real estate subject only to the superior lien." *Union Central Life Ins. Co. v. Reser*, 134 Kan. 876, 880, 8 P.2d 366 (1932). However, only the equitable title passes on

confirmation of the sheriff's sale, not the legal title. The legal title remains with the debtor until the sheriff's deed is executed. *Motor Equipment Co. v. Winters*, 146 Kan. 127, 135, 69 P.2d 23 (1937). It has also been held that the debtor holds the legal title in trust for the purchaser during the redemption period and the record of the foreclosure proceedings is constructive notice of the equitable title acquired by the purchaser at the foreclosure sale. *Union Central Life Ins. Co. v. Reser*, 134 Kan. at 880.

While prior Kansas cases have used the terms "equitable owner," "an equitable title," "a full equitable title," or "a vested equitable title," it seems apparent that a purchaser at a foreclosure sale does not receive legal title or "ownership" of the property until the passage of the redemption period. In *McFall v. Ford*, 133 Kan. 593, 1 P.2d 273 (1931), the court recognized that a mortgagee's remedy on default is an ordinary foreclosure action and sale of the mortgaged premises. The court further held:

"A judgment for the balance due on the debt secured by the mortgage, and a decree foreclosing the mortgage, have the effect of converting the mortgage lien into the lien of the judgment and decree (*Dumont v. Taylor*, 67 Kan. 727, 74 Pac. 234); but that is still a lien only upon the property, and is not a transfer of title.

. . . .

"In *Clark v. Nichols*, 79 Kan. 612, 100 Pac. 626, a foreclosure proceeding under the redemption law, it was said:

" 'The sale and redemption are in a sense parts of the foreclosure proceeding. . . .' (p. 615.)

"In *Bowers v. Jett*, 91 Kan. 364, 366, 139 Pac. 383, it was said:

" '. . . the property was sold under the foreclosure decree, and the form of the first-mortgage lien was thereby changed from a judgment to a certificate of purchase, but it was essentially the same demand and was still a first charge.'

"The certificate of purchase serves a purpose of its own. Its function ceases when the deed is made. (*Armstead v. Jones*, 71 Kan. 142, 80 Pac. 56.)

"In *Chambers v. Rose*, 111 Kan. 22, 206 Pac. 336, involving the foreclosure of a mortgage after the redemption law took effect, it was held:

" 'On the confirmation of a sale of real estate under an order of sale in a foreclosure action only the equitable title to the real estate passes to the purchaser on confirmation; the legal title will not pass until the sheriff's deed is executed.'

"The statute (R.S. 60-3439) specifically provides that the right of possession shall remain in the defendant owner during the statutory period of redemption, although his title and right of possession during that time is not

subject to sale on execution (R.S. 60-3455. See *Smith v. Shaver*, 112 Kan. 790, 212 Pac. 666.) While the judgment and decree of foreclosure determines the amount due on the debt secured by the mortgage and the extent of the lien on the specific real property, and the order of confirmation determines the regularity of the sale and who shall be entitled to a sheriff's deed, and when such deed shall issue, the right to the deed is conditional upon redemption, and the court still retains jurisdiction to determine any questions which may arise concerning redemption, the actual issuance of the deed, and the placing of the grantee in possession, should a deed issue. Since the deed is the instrument which passes title, and the court has jurisdiction of the cause until after title has passed, there is no complete sale of the property until the deed is in fact issued." 133 Kan. at 616-18.

In the instant case, it does not appear material whether the legal or practical test is utilized to determine "ownership" of the subject property during the redemption period. The same conclusion must follow.

SBA acquired an equitable interest in the property, not an ownership interest. As noted in *McFall v. Ford*, the certificate of purchase received by SBA following confirmation of the sheriff's sale is more akin to a lien interest than an ownership interest. It is an interest recognized and protected by courts of equity. While the defendant owner retains legal ownership of the property and enjoys the continued right of possession and benefit of the property during the redemption period, the owner will not be permitted to commit waste thereon or to sell or encumber his interest to the detriment of the purchaser. In that regard, the owner holds the property in trust for the purchaser. However, the purchaser enjoys none of the attributes of ownership during the redemption period. Except in the event of abandonment or waste, the purchaser does not have the right of possession, does not share in the profits or fruits of the land, and cannot interfere with the defendant owner's peaceful enjoyment of the land. Indeed, the purchaser only has a judgment lien along with the possibility of future ownership. During the redemption period, the defendant owner has the absolute right to redeem the property by payment of the judgment lien or to sell the property subject to the lien without permission of the purchaser or the court. In such event, the judgment lien is extinguished and the purchaser loses all interest in the property.

As has been indicated, the answer to the question of who is the owner of the property cannot be simply answered by pinpointing who holds legal title. *Roberts v. Osburn*, 3 Kan. App. 2d 90, 94, 589 P.2d 985 (1979). Incidents of "ownership" in property, however, generally include the rights to its possession and use and the enjoyment of its products, in addition to legal title and the right to sell or otherwise dispose of it. *Central Kansas Power Co. v. State Corporation Commission*, 221 Kan. 505, 515-16, 561 P.2d 779 (1977); *Roberts v. Osburn*, 3 Kan. App. 2d at 94. SBA enjoyed *none* of the usual incidents of ownership in the subject property. It can hardly be said that the mere possibility of receipt of a sheriff's deed in the future will rise to the status of "ownership" under either legal or practical principles.

SBA argues that, even if it did not have an ownership interest in the property during the redemption period, the sheriff's deed conveying fee simple absolute title should relate back to the date of the sheriff's sale. We disagree.

The doctrine of relation back is of ancient origin and has always been applied both at law and in equity to meet the requirements of justice, to protect purchases, and to effectuate the intent of the parties to a contract for the sale of real estate. *Hall v. Pioneer Crop Care, Inc.*, 212 Kan. 554, 560, 512 P.2d 491 (1973). The doctrine is never utilized "for the purpose of doing wrong or injustice, but only for the purpose of doing right and justice." *Marshall v. Shepard*, 23 Kan. 321, 325 (1880). It is generally used to protect the title to property from the time of contract to the time of conveyance. It merely relates back to cut off all intervening equities, encumbrances, and conveyances in order to give the purchaser a clear and unencumbered title to the property. *Knox v. Doty*, 81 Kan. 138, 140, 105 Pac. 437 (1909).

Even though the court applied the relation back doctrine in *Knox v. Doty*, which involved title to land acquired by a purchaser at a mortgage foreclosure sale after the enactment of the redemption statute, we do not find the doctrine to be controlling under the facts of this case. In *Knox*, the sale was made in 1895. In 1906 a third person obtained a quitclaim deed from the judgment debtor. The sheriff's sale was confirmed in 1907 and a sheriff's deed was executed to the purchaser who then filed an action to quiet his title to the land. The relation back doctrine

was applied to remove the encumbrance and to do justice under the facts of that case.

In the present case, there was no attempt by the defendant owner to convey or otherwise encumber or cloud the equitable interest of SBA. The only reason advanced for utilizing the relation back doctrine is to permit SBA to escape payment of ad valorem taxes accruing during the redemption period. We believe the rights of other taxpayers would be adversely affected by applying the relation back doctrine and such application would result in injustice rather than justice.

If SBA is not required to pay the assessed taxes, the other property owners in Meade County will be forced to absorb an additional tax burden. SBA knew the duration of the redemption period when it bid for the property at the sheriff's sale and the amount of ad valorem taxes that would be assessed during such period. It should have logically assumed the taxes would not be paid by the defendant owner unless the land was redeemed or sold. Thus, it could have bid an amount that would have accommodated payment of the future taxes. An additional consideration is the fair market value of the mortgaged property. If the value of the property exceeds the judgment lien, SBA will recapture its tax liability on future sale. If the value of the property does not equal or exceed the judgment lien and accrued taxes, one could assume SBA used poor judgment in making the initial loan or in its bid at the sheriff's sale. In either event, we do not believe justice would be served by allowing SBA to escape payment of taxes which accrued during the redemption period.

Having decided SBA did not become the "owner" of the subject property until after the expiration of the redemption period and, thus, is not immune from payment of state or local taxes assessed against the property during such period, it is not necessary for us to address the County's contention that the United States waived its immunity from payment of the ad valorem taxes pursuant to 15 U.S.C. § 646 (1988).

Reversed and remanded to the district court with instructions to enter a judgment in favor of the County in accordance with this opinion.