**In re PRAIRIE MINING, INC., Debtor.**

**Robert L. BAER, Trustee, Plaintiff,**

**v.**

**BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, KANSAS, Defendant.**

**Bankruptcy No. 93–41090–7.
Adv. No. 94–7094.**

United States Bankruptcy Court,
D. Kansas.

August 21, 1995.

Order Clarifying Decision and Denying
Reconsideration Feb. 12, 1996.

Roger L. Tarbutton, Assistant County Counselor, Olathe, Kansas, for defendant.

John Foulston, United States Trustee, Wichita, Kansas.

Robert L. Baer, Trustee, Topeka, Kansas.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Chief Judge.

This proceeding is before the Court for resolution of the trustee's attack on various aspects of real and personal property tax claims asserted by the Board of County Commissioners of Johnson County, Kansas (Johnson County). The trustee appears as his own counsel in this proceeding. Johnson County is represented by Assistant County Counselor Roger L. Tarbutton. The Court has reviewed the relevant pleadings and is now ready to rule on what it perceives to be the major issues between the parties.

## FACTS

The pertinent facts are not in dispute. The debtor owned real and personal property located in Johnson County which it had pledged to the Equitable Life Assurance Society (Equitable). After the debtor defaulted on its obligations, Equitable filed suit and obtained a judgment foreclosing its mortgage and security interest. On July 6, 1993, before any sale based on that judgment occurred, the debtor filed a chapter 11 petition. At that time, the real property taxes for 1989 through 1992 and the personal property taxes for 1991 and 1992 which it owed Johnson County were unpaid and overdue. The case was converted to chapter 7 on March 24, 1994, and Equitable was granted stay relief to sell the real property. Real property taxes for 1993 and 1994 and and personal property taxes for 1993, 1994, and, if any are owed, 1995 also remain unpaid. All of the property which could be subject to tax liens in favor of Johnson County has been sold free and clear, with the liens, if any, to attach to the sale proceeds. Money to pay the real estate taxes is in escrow, and the trustee has set aside enough money to pay the personal property taxes.

## DISCUSSION AND CONCLUSIONS

At this time, the Court is prepared to rule on the following questions: (1) whether Equitable's foreclosure judgment and Johnson County's possible tax liens prevented any of the debtor's property from becoming property of the bankruptcy estate; (2) whether property subject to any Johnson County liens which the trustee cannot avoid should be distributed pursuant to § 724(b), which invades property securing tax liens to the extent necessary to pay claims having priority under § 507(a)(1) through (7); (3) whether 11 U.S.C.A. § 545(1)(A) empowers the trustee to avoid any personal property tax lien Johnson County might have; and (4) whether portions of Johnson County's claim qualify as administrative claims under § 503 or priority claims under § 507. The Court will first discuss what property became property of the estate, then discuss the other issues relating to the real property, and finally, the other issues relating to the personal property.

### 1. *Property of the Bankruptcy Estate*

■ Johnson County contends that the debtor's real and personal property which had been subject to the County's taxes (and so, the proceeds of that property) were not property of the bankruptcy estate. The Court cannot agree. Although a foreclosure judgment had been entered before the debtor filed for bankruptcy, no sheriff's sale of the real property had been held. Consequently, the debtor retained both legal and equitable title on the date it filed its petition, and the real property became property of its estate pursuant to 11 U.S.C.A. § 541. *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Thompson,* 894 F.2d 1227 (10th Cir.1990); *In re Application of SBA for Ad Valorem Tax Exemption,* 14 Kan.App.2d 600, 797 P.2d 879 (1990). The real property remained property of the estate until it was sold after stay relief was granted, and the sale proceeds that were placed in escrow remain property of the estate until the trustee's dispute with Johnson County is resolved.

■ No suit to recover the personal property had been initiated nor had the debtor voluntarily turned the property over before it filed its chapter 11 petition. Even more clearly than the real property, the personal property became property of the estate under § 541 on the date the case was filed. After the case was converted to chapter 7, the trustee sold the personal property free

and clear with any liens attaching to the proceeds. The personal property remained property of the estate until the trustee sold it, and then it was replaced by the sale proceeds. Johnson County cites no law in support of its contrary position regarding the personal property.

### 2. Real Property Tax Claims

Under Kansas law, real estate is appraised as of January 1, *K.S.A.1994 Supp. 79–503a,*[1] taxes on it become due on November 1, *K.S.A. 79–1804,* and the taxes are payable on December 20 or one-half on December 20 and one-half on the following June 20, *K.S.A.1994 Supp. 79–2004.*[2] A lien for the taxes attaches automatically on November 1 and continues in effect until the taxes plus any penalties and interest which may have accrued are paid. *K.S.A. 79–1804.*

The real estate taxes for 1989 through 1992 were due and payable before the debtor filed for bankruptcy, and were secured by nonavoidable liens on the debtor's real property. Section 724(b) of the Bankruptcy Code provides in pertinent part that property subject to such a tax lien is to be distributed: (1) first to any holder of a nonavoidable lien that is senior to the tax lien; (2) second to any holders of claims specified in § 507(a)(1) through (7) to the extent of the allowed amount of the tax claim that is secured by the lien; (3) third to the holder of the tax lien to the extent that the allowed amount of its claim that is secured by the lien exceeds any amount distributed to claims under clause (2); (4) fourth to the holder of an allowed claim secured by a lien that is junior to the tax lien; (5) fifth to the holder of the tax lien to the extent its secured claim was not paid under clause (3); and (6) sixth to the bankruptcy estate. There are no liens senior to Johnson County's liens, so assuming there are administrative expense claims against the debtor's estate which arise from activities other than disputes about the tax liens on the real property, *see Oakland*

*County Treasurer v. Allard (In re Kerton Industrial),* 151 B.R. 101, 102–03 (E.D.Mich. 1991) (*§ 724(b) may not be applied where the only priority claims that would be paid are the expenses of the sale of the property subject to the tax lien); see also 3 Norton Bankruptcy Law & Practice 2d, § 71:3 at 71–6 to –7 (1994) (approving reasoning of Kerton Industries case),* § 724(b) will require the trustee to distribute the proceeds subject to the 1989 through 1992 tax liens first to § 507(a)(1) through (7) claimants before distributing the remainder to Johnson County.

The debtor's real property was to be appraised for 1993 taxes by March 1, *K.S.A.1994 Supp. 79–1460,*[3] before the debtor's bankruptcy filing, but the taxes were not due or secured by a lien by then, *K.S.A. 79–1804.* The automatic stay prevented any lien for these taxes from attaching postpetition. § 362(a)(4); *In re Parr Meadows Racing Ass'n (Lincoln Savings Bank v. Suffolk County Treasurer),* 880 F.2d 1540, 1544–46 (2nd Cir.1989). Instead, they became a priority claim pursuant to § 507(a)(8)(B). The debtor's 1994 taxes were not assessed prior to bankruptcy, and so do not become priority claims under § 507(a)(8)(B). Instead, they are administrative expenses under § 503(b)(1)(B).

Johnson County argues that it has a perpetual interest in all the real estate in the county so that its tax liens relate back to a time prior to the debtor's bankruptcy filing, even for taxes that are not assessed or due until later. It relies on *Maryland National Bank v. Mayor of Baltimore (In re Maryland Glass Corp.),* 723 F.2d 1138 (4th Cir. 1983), which expresses the minority view on this point. This Court agrees instead with the majority view as expressed in *Parr Meadows,* 880 F.2d at 1546–49 and *Makoroff v. City of Lockport,* 916 F.2d 890, 893–94 (3rd Cir.1990). The county does not have an "interest" in all real property within its realm of the sort which may be perfected postpetition

---

**1.** The 1990 amendment to this statute made no changes affecting this decision.

**2.** The 1989, 1992, and 1994 amendments to this statute made no changes affecting this decision.

**3.** The 1994 amendment to this statute made no changes affecting this decision.

under § 546(b),[4] nor does Kansas law provide for any reference back of the county's real property tax liens when they are created on November 1. While § 401 of the Bankruptcy Reform Act of 1994 added subsection (18) to § 362(b) to help ad valorem taxing authorities by overruling the majority line of cases and allowing statutory liens for taxes coming due postpetition to be created and perfected, that provision does not apply to cases filed before the effective date of the Act. *See Pub.L. No. 103–394, § 401 and § 702(b) (Oct. 22, 1994), reprinted in 1994 U.S.C.C.A.N. (108 Stat.) 4106, 4141, 4150.* In cases filed after October 22, 1994, Johnson County may obtain a lien under this amendment, but not in cases like this one that were filed before then.

3. *Personal Property Tax Claims*

▮▮▮▮ Kansas law regarding the taxation of personal property is much the same as that for real property. "All tangible personal property subject to taxation shall be listed and assessed as of the first day of January each year in the name of the owner thereof." *K.S.A. 79–301.* "On or before March 15 of each year . . . every . . . corporation required by this act to list property shall make and personally sign a statement listing all tangible personal property which by this act such person is required to list . . . as the . . . agent . . . and deliver the same to the county appraiser." *K.S.A.1994 Supp. 79–306.[5]* The county appraiser is to notify the taxpayer by May 1 of any change in the classification or valuation of its personal property. *K.S.A.1994 Supp. 79–1460.[6]* Though taxes are due on November 1st of each year, *K.S.A. 79–1804*, they are payable in full on or before December 20th or payable one-half on or before December 20 and one-half on or before June 20 of the following year, *K.S.A.1994 Supp. 79–2004a.[7]* "If any

owner of personal property surrenders or transfers such property to another after the date such property is assessed and before the tax thereon is paid, whether by voluntary repossession or any other voluntary act in reduction or satisfaction of indebtedness, then the taxes on the personal property of such taxpayer shall fall due immediately, and a lien shall attach to the property so surrendered or transferred, and shall become due and payable immediately." *K.S.A. 79–2020.*

A federal district judge in the District of Kansas has held that the filing of a voluntary bankruptcy petition triggers K.S.A. 79–2020, so that a lien for unpaid taxes attaches to the personal property that becomes property of the estate. *In re Knights Athletic Goods (Board of County Comm'rs v. Knights Athletic Goods), 98 B.R. 553, 554–55 (D.Kan. 1989) (Kelly, J.) ("Knights I").* However, in a later proceeding in the same bankruptcy case, another district judge held that the lien thus created is a statutory lien which can be avoided pursuant to 11 U.S.C.A. § 545(1)(A). *In re Knights Athletic Goods (Sorenson v. Board of County Comm'rs), 128 B.R. 679, 683–84 (D.Kan.1991) (Crow, J.) ("Knights II").* Under these rulings, Prairie Mining's personal property taxes for the years 1993 and before became due and payable when the company filed its chapter 11 petition, and became secured by an avoidable lien on that date.

▮▮▮▮ Johnson County contends that an unpublished ruling by still another district judge in some way changes the result of *Knights II* by allowing the lien created by the debtor's transfer of its property to the bankruptcy estate to relate back to January 1 for perfection purposes. *Butler County v. Bank of the West, No. 92–1515–MLB, Memorandum and Order (Oct. 8, 1993) (Belot, J.).* The Court cannot agree. First, that ruling

---

**4.** Section 204 of the Bankruptcy Reform Act of 1994 amended § 546, but applies only to cases filed after the effective date of the Act, October 22, 1994, so the Court has not considered what impact, if any, it might have had on this case. *See Pub.L. No. 103–394, § 204(b) and § 702 (Oct. 22, 1994), reprinted in 1994 U.S.C.C.A.N. (108 Stat.) 4106, 4122, 4150.*

**5.** This material is quoted from the statute as amended in 1992. None of the changes made by the 1992 amendment affect this decision.

**6.** Although this statute was amended in 1990, 1991, 1992 and 1994, none of the amendments made changes affecting this decision.

**7.** The 1992 amendment to this statute made no changes affecting this decision.

concerned escaped taxes under K.S.A. 79–1475 and the question was whether a lien imposed by 79–2020 could follow the personal property into the hands of a party who bought it at a bankruptcy sale. Bankruptcy Code § 545 and *Knights I* and *II* were apparently not considered, presumably because the bankruptcy estate was not involved in the appeal. Second, this Court does not agree that the words "as of" in K.S.A. 79–301 mean that the lien created upon transfer relates back to a time before the transfer; all they mean is that the extent of the taxpayer's taxable property and its value are fixed and measured "as of" January 1. Any lien under K.S.A. 79–2020 originates when a transfer occurs, and the transfer involved in this case occurred when the debtor filed for bankruptcy. Pursuant to Bankruptcy Code § 545, such a lien is avoidable. Under Kansas law, in the absence of a transfer, Johnson County does not obtain any lien on the taxpayer's personal property, but instead must collect its taxes through a warrant directing the sheriff to levy on personal property. *K.S.A. 1994 Supp. 79–2017.*[8]

■■■■■ During the bankruptcy proceeding, the debtor was obliged to list and assess, as of January 1, 1994, its personal property that was subject to taxation. Although Johnson County was prohibited by 11 U.S.C.A. § 362(a)(4) from any act to create, perfect, or enforce any lien against property of the estate, the 1994 taxes on the estate's personal property became administrative expense claims pursuant to 11 U.S.C.A. § 503(b)(1)(B)(i). Johnson County contends a lien for these taxes was created through the operation of any of several state statutes when the trustee sold the property. *See K.S.A. 79–2109, –2110, and –2111.* The Court disagrees; § 362(a)(4) prohibits the imposition of such liens against property of the estate. In fact, the county is better off with an administrative expense claim than a lien. If a lien arose, the trustee could distribute the proceeds of the property under § 724(b), paying claims having priority under § 507(a)(1) through (7) before paying to the

county the balance, if any, of the amount secured by its lien. The 1994 personal property taxes arose while the debtor was in chapter 11 and are therefore an administrative claim of the chapter 11 portion of the case. Any claim for 1995 personal property taxes arose after the case was converted, and so constitutes an administrative claim of the chapter 7 portion of the case.

### 4. *Conclusion*

For these reasons, the Court concludes the real and personal property in dispute all became property of the debtor's bankruptcy estate. Johnson County's liens for real property taxes for 1989 through 1992 are not avoidable but, so long as there are administrative expense claims other than those incurred in disputes about the tax liens on that property, the proceeds subject to the liens are to be distributed as provided by § 724(b). The 1993 real property taxes are a priority claim under § 507(a)(8), and the 1994 real property taxes are administrative expense claims under § 503(b)(1)(B)(i). A lien for the personal property taxes for 1993 and before attached to the property when the debtor filed for bankruptcy, but the trustee may avoid the lien under § 545(1)(A). Any personal property taxes owed for 1994 are an administrative claim of the chapter 11 portion of the case, and any owed for 1995 are an administrative claim of the chapter 7 portion.

The Court is uncertain whether these conclusions will enable the parties to resolve any remaining disputes they may have. Consequently, a status conference is hereby scheduled for Thursday, September 14, 1995, at 11:00 a.m. The parties are directed to be prepared at that time to present argument on any issues they believe have not been resolved by this order.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will not be entered on a separate document

---

**8.** This statute applies only to Sedgwick, Johnson, Wyandotte, and Shawnee counties. The procedure for other counties to collect personal property taxes is largely the same but with different time limits. *See K.S.A.1994 Supp. 79–2101.*

as required by FRBP 9021 and FRCP 58 until any remaining disputes the parties may have are resolved.

## ORDER DENYING RECONSIDERATION

This proceeding is before the Court on a motion to reconsider filed by the Board of County Commissioners of Johnson County, Kansas (Johnson County). Johnson County is represented by Assistant County Counselor Roger L. Tarbutton. The trustee appears as his own counsel in this proceeding. The Court has reviewed the relevant pleadings and is now ready to rule.

Johnson County asks the Court to reconsider four facets of the Memorandum of Decision it issued on August 21, 1995. The County argues: (1) 11 U.S.C.A. § 724(b) does not apply in this case because the debtor's general unsecured creditors will not benefit from its application; (2) its tax liens should be paid first from the proceeds of the sale of the debtor's real property because a foreclosure judgment had been entered prepetition and, under state law, the taxes would have been paid first from the proceeds of a foreclosure sale; (3) the County's claim for the debtor's 1993 real property taxes qualifies as an administrative expense under 11 U.S.C.A. § 503(b)(1)(B)(i); and (4) the County's claim for the 1994 real property taxes qualifies as an administrative expense of the chapter 7 portion of the bankruptcy case and not the chapter 11 portion. After thoroughly reviewing these matters, the Court concludes it must reject all of Johnson County's arguments.

Johnson County first argues that § 724(b) was adopted solely to benefit general unsecured creditors and may not be applied in this case because no such benefit will be realized. The argument is based on a quotation from *Oakland County Treasurer v. Allard (In re Kerton Industrial)*, 151 B.R. 101, 103 (E.D.Mich.1991), discussing "general creditors," which the County takes to refer to general unsecured creditors. However, the County apparently overlooked the significance of a case citation and parenthetical remark which it replaced with an ellipsis in its brief. The omitted material reads: "*See,*

*e.g., In re K.C. Machine and Tool Co.,* 816 F.2d 238, 247 (6th Cir.1987) ('Here, because of § 724(b), administering (selling) the property promises a large *benefit* by increasing the funds available for distribution to administrative creditors.' (Emphasis supplied).)." *151 B.R. at 103.* This material indicates that the court was not saying that § 724(b) could be applied only when some of the proceeds of property encumbered by a tax lien would be paid to general unsecured creditors. Instead, the court was saying that the estate had to receive some benefit other than simply paying the costs of selling the property and that obtaining money to pay administrative expenses was a sufficient benefit.

■ While there may be insufficient money in the case before this Court to pay anything to the general unsecured creditors, the estate will still benefit from the application of § 724(b) because more money will be available to pay the priority claims against the estate. The faulty logic of Johnson County's theory is made even more clear by considering a hypothetical bankruptcy estate which has no property other than that subject to an unavoidable tax lien. As the Court indicated in its prior ruling, § 724(b) provides that such property is to be distributed: (1) first to any holder of a nonavoidable lien that is senior to the tax lien; (2) second to any holders of claims specified in § 507(a)(1) through (7) to the extent of the allowed amount of the tax claim that is secured by the lien; (3) third to the holder of the tax lien to the extent that the allowed amount of its claim that is secured by the lien exceeds any amount distributed to claims under clause (2); (4) fourth to the holder of an allowed claim secured by a lien that is junior to the tax lien; (5) fifth to the holder of the tax lien to the extent its secured claim was not paid under clause (3); and (6) sixth to the bankruptcy estate. To get any money to the general unsecured creditors, the property subject to the tax lien would have to be sufficient to pay the first five items in full and leave something in addition to distribute to the estate. In that situation, the first five items would have been paid in full even if § 724(b) did not exist. Thus, Johnson County's theory is that the provision can apply

only when its application would be meaningless. Since there are priority claims in this case in addition to those arising from the sale of the property subject to the County's liens and from the trustee's dispute with the County, § 724(b) applies to subordinate the County's liens to the priority claims covered by subsection (2) of that provision.

 Johnson County next argues that the foreclosure judgment entered before the debtor filed for bankruptcy somehow increased the significance of its tax liens on the debtor's real property so that the property should not be considered to be property of the estate or at least that equitable considerations should preclude applying § 724(b) to the liens. Of course, the County's liens already had first priority against the property before the judgment was entered, and were entitled to be paid first if the property were sold. According to the Kansas Court of Appeals, Kansas law provides that no title passes upon entry of a foreclosure judgment; instead, equitable title passes when a foreclosure sale is confirmed, and legal title passes only at the expiration of any redemption period. *In re Application of SBA for Ad Valorem Tax Exemption,* 14 Kan.App.2d 600, 604–05, 797 P.2d 879 (1990).[1] Consequently, following the foreclosure judgment, the debtor still had both equitable and legal title to the real property, and the property passed into the bankruptcy estate upon the filing of the debtor's chapter 11 petition. *See Jim Walter Homes v. Spears (In re Thompson),* 894 F.2d 1227, 1228–31 (10th Cir.1990) *(under similar state law and § 1322(b), even after a foreclosure judgment, debtors retain the right to cure a mortgage default at least until the foreclosure sale; obviously, the property became property of the estate despite the foreclosure judgment).* Once the property became property of the estate and the case was converted to chapter 7, § 724(b) became applicable to determine the distribution of the proceeds of the property, overriding the distribution scheme that would apply under Kansas law. Johnson County's equitable arguments are simply complaints that it was unfair for Congress to pass

§ 724(b). The Court, of course, has no authority to substitute its view of fairness and equity for the clearly expressed view of Congress.

Johnson County's third argument is that its claim for the debtor's 1993 real property taxes qualifies as an administrative expense under § 503(b)(1)(B)(i), and consequently, a first priority under § 507(a)(1), rather than an eighth priority under § 507(a)(8), as the Court declared in its decision. Section 503 provides in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
> (1) . . .
>
> (B) any tax—
>
> > (i) incurred by the estate, except a tax of a kind specified in section 507(a)(8) of this title.

Such expenses are given the first priority under § 507(a). Section 507(a) gives an eighth priority for:

> (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—
>
> . . . . .
>
> (B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition.

Section 502(i) also has some bearing on tax claims. It provides:

> A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(8) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

Congress' intent in drafting these provisions is somewhat less than clear. Among other things, the use of three different words— "incurred," "assessed," and "arise"—to refer to the time when the tax liability comes into

---

1. The Court notes that its prior decision mistakenly indicated this opinion began on page 879 of the reporter. As indicated above, it actually begins on page 600.

existence creates the possibility of conflicting interpretations. One treatise has remarked:

> Depending on the characterization of when a tax is "incurred" and "assessed," it is possible that under a strict reading of the Code, a tax could be incurred *before* bankruptcy, and thus be ineligible for first priority treatment, but not be assessed until *after* bankruptcy, and thus be disqualified as a[n eighth] priority. Some courts have nevertheless allowed the taxing authority a[n eighth] priority.

2 *Norton Bankruptcy Law & Practice 2d,* § 42.38 at 42–188 to –189 (1994). Besides the difficulties caused by those words, the exception clause in § 503(b)(1)(B)(i) seems literally to say administrative expenses do not include any tax of the *kind* covered by § 507(a)(8), *In re Westholt Manufacturing,* 20 B.R. 368, 370–71 (Bankr.D.Kan.1982); the word "kind" seems to refer broadly to an income or gross receipts tax, property tax, withholding tax, and so forth, without regard to the other, largely temporal, requirements of § 507(a)(8). The exception has usually been interpreted, though, simply to exclude prepetition liabilities from administrative expense treatment. *See 3 Collier on Bankruptcy,* ¶ 503.04[1][b] at 503–35 to –36 (15th ed. 1994). Separating prepetition and postpetition liabilities, of course, remains a difficult problem.

■ The common legal definitions of "assess," "incur," and "arise" demonstrate the flexible meanings they can have. The leading legal dictionary explains that "assess" means:

> To ascertain; fix the value of. To fix the amount of the damages or the value of the thing to be ascertained. To impose a pecuniary payment upon persons or property. To ascertain, adjust, and settle the respective shares to be contributed by several persons toward an object beneficial to them all, in proportion to the benefit received. To tax.
>
> In connection with taxation of property, means to make a valuation and appraisal of property, usually in connection with listing of property liable to taxation, and implies the exercise of discretion on the part of officials charged with duty of assessing, including the listing or inventory of property involved, determination of extent of physical property, and placing of a value thereon. To adjust or fix the proportion of a tax which each person, of several liable to it, has to pay; to apportion a tax among several; to distribute taxation in a proportion founded on the proportion of burden and benefit. To calculate the rate and amount of taxes. To levy a charge on the owner of property for improvements thereto, such as for sewers or sidewalks.

*Black's Law Dictionary (5th ed. 1979), p. 106.* This definition shows that "assess" can refer to nearly any step in the process of imposing a property tax, determining its amount, and requiring its payment. The same source explains "incur" means:

> To have liabilities cast upon one by act or operation of law, as distinguished from contract, where the party acts affirmatively. To become liable or subject to.

*Id. at 691.* This definition also does not clearly refer to any particular point in the process by which a tax is imposed, beyond perhaps suggesting it occurs at the earliest time when it becomes certain that some tax will be owed. The most general meaning provided for "arise" is similar:

> To spring up, originate, to come into being or notice; to become operative, sensible, visible, or audible; to present itself.

Again, this definition suggests an earlier rather than a later time in the taxing process. Still, all three words seem broad enough to cover nearly any step in that process.

■ Having carefully reviewed §§ 502(i), 503(b)(1)(B)(i), and 507(a)(8)(B), the Court is convinced that Congress intended for all property taxes coming due postpetition to qualify for either the first or eighth priority. This purpose is best served by construing "incurred" in § 503 to mean the same thing as "assessed" in § 507(a)(8)(B). Under the Bankruptcy Code, "debt" means "liability on a claim" and "claim" means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

258

secured, or unsecured." *§ 101(12) & (5)(A)*. Under these definitions, a claim for a property tax must be considered to be "incurred" under § 503 or "assessed" under § 507(a)(8)(B) as soon as the debtor (or the debtor's property, if the tax is collectible only from the property) is necessarily liable to pay it. Section 502(i) then serves the purpose of making sure a tax that constitutes a claim prepetition can qualify for priority under § 507(a)(8) even if it might not be allowable until sometime postpetition, for example, because the amount of the tax is not fixed prepetition. When the debtor became necessarily liable to pay the tax is answered in this case by Kansas real property tax law.

 There was a time in Kansas when an owner could exempt property from real estate taxes by transferring it to an exempt entity even after the listing and valuation of property for taxation had begun. *Trinity Evangelical Lutheran Church v. Wyandotte County Comm'rs*, 118 Kan. 742, 236 P. 809 (1925). However, since that time, the legislature has provided in K.S.A. 79–1804 that when property is transferred to an exempt entity after January 1 but before November 1 (when a lien attaches for that year's real property tax), a tax is owed for the portion of the year when the property was still owned by the non-exempt entity. Thus, as long as a non-exempt entity owns real property in Kansas after January 1, the property will necessarily be subject to at least some tax for that year. A claim for the tax therefore comes into existence on January 1 each year, and the only question thereafter is how much tax will be owed, not whether any will be owed. In addition, since the nonexempt owner cannot free the property from any of the tax for the full year except by transferring it to an exempt entity, the Court believes the claim that comes into existence on January 1 must be considered to be one for the full year's tax. For these reasons, the Court concludes the tax is "assessed" in the sense of "imposed" on January 1 each year. Since the debtor filed its bankruptcy case after January 1, 1993, its 1993 real property taxes are covered by § 507(a)(8)(B).

 That conclusion also resolves Johnson County's fourth argument. Since "incurred" in § 503(b)(1)(B)(i) and "assessed" in § 507(a)(8)(B) must be construed to mean the same thing, the 1994 taxes were incurred on January 1 of that year, before the bankruptcy case was converted to chapter 7. Consequently, they are administrative expenses of the chapter 11 portion of the case.

The Court's Memorandum of Decision is hereby amended to specify that the 1994 real property taxes are chapter 11 administrative expenses. Except for this clarification, the Court concludes that Johnson County's motion to reconsider must be denied.

IT IS SO ORDERED.