In re KNIGHTS ATHLETIC
GOODS, INC., Debtor.

William B. SORENSON, Jr., Trustee of
the Bankruptcy Estate of Knights
Athletic Goods, Inc., Plaintiff,

v.

BOARD OF COUNTY COMMISSION-
ERS OF SALINE COUNTY,
KANSAS, Defendant.

No. 90–1012–C.

United States District Court,
D. Kansas.

June 5, 1991.

Daniel K. Diederich, Salina, Kan., for plaintiff.

William B. Sorensen, Jr., Morris, Laing, Evans, Brock & Kennedy, Wichita, Kan., trustee of the Bankruptcy Estate of Knights Athletic Goods, Inc.

Michael A. Montoya, Achterberg & Neustrom, Salina, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case comes before the court upon the Board of County Commissioners of Saline County, Kansas' (County) appeal from the decision of the bankruptcy court. This is the second appeal during this bankruptcy case. In the first appeal, *In re Knights Athletic Goods, Inc.*, 98 B.R. 553 (D.Kan. 1989), Judge Kelly reversed the decision of the bankruptcy court. The bankruptcy court had overruled the county's objection to the disbursement of funds, finding that the County's property tax claim in the amount of $7,018.68 did not have priority over the SBA's secured claim. Judge Kelly concluded that the filing of the bankruptcy petition effected a voluntary surrender of

property from the debtor, Knights Athletic Goods (Knights), to the bankruptcy estate, thereby creating a lien in favor of the County which attached to the property for the unpaid taxes. Under 15 U.S.C. § 646 and Kansas law, "the County's lien had preference over all other claims against the property, including the perfected security interest of the SBA." 98 B.R. at 556.

Following Judge Kelly's decision, the trustee filed a complaint to avoid a statutory lien pursuant to 11 U.S.C. § 545(1)(A). The bankruptcy court held that "the trustee is entitled to avoid the County's tax lien and that it may preserve the lien pursuant to 11 U.S.C. § 551 for the benefit of the estate." The County timely appeals.

The facts are stipulated. The parties also agree that this case presents three issues of law:

(1) Whether the lien avoidance challenge is barred by the doctrine of *res judicata* or collateral estoppel?

(2) Whether K.S.A. 79–2020 as construed by the district court falls with the purview of the lien avoidance in 11 U.S.C. § 545?

(3) Does 15 U.S.C. § 646 control over 11 U.S.C. § 545?

Having considered the stipulated facts, briefs of counsel and applicable law, the court is now prepared to rule.

### Facts and Procedural History

1. On March 20, 1980, Knights executed a promissory note in the amount of $250,000 to Planters State Bank and Trust Company (Bank).

2. On that same day, Knights granted a security interest to the Bank. The security interest covered debtor's current and after-acquired business machinery, equipment, furnishing, furniture, inventory, contract rights, accounts receivable and general intangibles.

3. The Bank perfected the security interest that same day by filing a financing statement with the Secretary of State.

4. Knights failed to pay personal property taxes assessed January 1, 1985, and January 1, 1986.

5. The security agreement and financing statement were assigned to the Small Business Administration (SBA) on February 27, 1986.

6. Debtor filed a petition for relief in bankruptcy pursuant to Chapter 7 on April 22, 1987. The bankruptcy estate assets included retail inventory, furnishings and equipment.

7. On May 27, 1987, the bankruptcy court entered an order authorizing the sale of personal property on limited notice.

8. The trustee sold the retail inventory, furnishings and equipment of the debtor for the aggregate sum of $14,340.50.

9. The County filed a proof of claim in the bankruptcy proceedings on July 2, 1987, for the unpaid personal property taxes.

10. On September 21, 1987, the trustee filed a motion for authorization to disburse funds.

11. On October 10, 1987, the County filed an objection to the disbursement of funds, claiming that its property tax claim in the amount of $7,018.68 had priority over the secured claim of the SBA.

12. On August 12, 1988, the bankruptcy court overruled the County's objection. The trustee has distributed all of the proceeds from the sale except for the disputed sum of $7,018.68.

13. The County appealed the bankruptcy court's decision to federal district court in Civil Case No. 88–1537–K.

14. The parties agreed that 15 U.S.C. § 646, which requires a reference to applicable state law, controlled the action.

15. The federal district court reversed the bankruptcy court and held that the filing of the bankruptcy petition effected a voluntary surrender of property from the debtor to the bankruptcy trustee, thereby invoking a lien for personal property taxes pursuant to K.S.A. 79–2020.

16. The federal district court judgment was not appealed and became final.

17. On April 14, 1989, the trustee filed a complaint to avoid a statutory lien pursuant to 11 U.S.C. § 545(1)(A).

18. On May 11, 1989, the County filed its answer.

19. On December 28, 1989, the bankruptcy court held that the County's lien was avoidable under 11 U.S.C. § 545(1)(A). The court also held that the trustee may preserve the lien pursuant to 11 U.S.C. § 551 for the benefit of the bankruptcy estate.

20. The County timely appeals.

### Standard of Review

■ On appeal from the bankruptcy court, the district court sits as an appellate court. *See* 28 U.S.C. § 1334(a). Findings of fact are not to be set aside unless clearly erroneous; conclusions of law are reviewed *de novo. Virginia Beach Federal Sav. and Loan Ass'n v. Wood,* 901 F.2d 849, 851 (10th Cir.1990); *In re Schneider,* 864 F.2d 683, 865 (10th Cir.1988); *see* Bankruptcy Rules 7052 and 8013.

### Issues of Law

Whether the lien avoidance challenge is barred by the doctrine of *res judicata* or collateral estoppel?

The County contends that the trustee's lien avoidance challenge is barred by the doctrine of *res judicata* or collateral estoppel. The trustee contends that the issue was not decided by Judge Kelly and that the doctrines of *res judicata* and collateral estoppel are inapplicable.

The Tenth Circuit recently discussed the doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion) in *Northern Natural Gas Co. v. Grounds,* 931 F.2d 678 (10th Cir.1991).

Federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel. In our system of jurisprudence the usual rule is that, once decided in a court of competent jurisdiction, merits of a legal claim are not subject to redetermination in another forum. *Kremer v. Chemical Const. Corp.,* 456 U.S. 461, 485 [102 S.Ct. 1883, 1899, 72 L.Ed.2d 262] (1982); *Stokke v. Southern Pacific,* 169 F.2d 42, 43 (10th Cir.1948). Under res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the prior action. *Cromwell v. County of Sac,* 94 U.S. [4 Otto] 351, 352–53 [24 L.Ed. 195] (1876). Under collateral estoppel, or issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Montana v. United States,* 440 U.S. 147, 153 [99 S.Ct. 970, 973, 59 L.Ed.2d 210] (1979). Res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. *Id.* at 153–154 [99 S.Ct. at 973–74].

*Id.* at 681.

■ In *Ten Mile Indus. Park v. Western Plains Service Corp.,* 810 F.2d 1518 (10th Cir.1987), the Tenth Circuit commented:

Under certain circumstances, a litigant who was not a party to a federal case may use estoppel offensively in a subsequent federal suit against a party who lost on the decided issue in the first case. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. [322] at 326–31, 99 S.Ct. [645] at 649–51 [58 L.Ed.2d 552]. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry,* 449 U.S. [90] at 94, 101 S.Ct. [411] at 414 [66 L.Ed.2d 308]. However, the concept of collateral estoppel may be used only when the party against whom the earlier decision is asserted had a full and fair opportunity to litigate that issue in the earlier case. *Id.* at 95, 101 S.Ct. at 415.

810 F.2d at 1523. Collateral estoppel is binding on the bankruptcy court and precludes relitigation of factual issues if: (1) the issue to be precluded is the same as that involved in the prior state action; (2) the issue was actually litigated by the parties in the prior action; (3) the prior court's

determination of the issue was necessary to the resulting final and valid judgment. *In re Wallace*, 840 F.2d 762, 765 (10th Cir.1988).

■ The court has thoroughly reviewed Judge Kelly's decision in *In re Knights* and, in short, concludes that the issue of lien avoidance was not decided in that case. The trustee was not a party to the previous contested matter. Moreover, the lien avoidance claim could not have been raised in the prior contested matter. Contested matters are governed by Fed.R.Bankr.P. 9014. A claim for lien avoidance must be brought as an adversary proceeding. Fed. R.Bankr.P. 7001. *See D–1 Enterprises, Inc. v. Commercial State Bank*, 864 F.2d 36 (5th Cir.1989) (discussing the distinctions between contested matters and adversary proceedings).

The issue of lien avoidance is not barred by either *res judicata* or collateral estoppel.

Whether K.S.A. 79–2020 is a statutory lien which the trustee can avoid?

■ The trustee in bankruptcy is granted certain powers which are intended to benefit the bankruptcy estate as a whole. One example of these powers is found in 11 U.S.C. § 545, which provides in pertinent part:

The trustee may avoid the fixing of a statutory lien on the property of the debtor to the extent such lien—

(1) first becomes effective against the debtor—

(A) When a case under this title concerning the debtor is commenced;

The Bankruptcy Code defines a statutory lien as a

lien arising solely by force of statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest is made fully effective by statute.

11 U.S.C. § 101(47). "The legislative history indicates that '[a] statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action.' The House and Senate Reports list tax liens, mechanics', materialmens', and warehousemens' liens as examples of statutory liens." *4 Collier on Bankruptcy* ¶ 545.02 (L. King, 15th ed. 1990) (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 27 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977)), U.S.Code Cong. & Admin.News 1978, p. 5787.

K.S.A. 79–2020 provides in pertinent part:

If any owner of personal property surrenders or transfers such property to another after the date such property is assessed and before the tax thereon is paid, whether by voluntary repossession or any other voluntary act in reduction or satisfaction of indebtedness, then the taxes on the personal property of such taxpayer shall fall due immediately, and a lien shall attach to the property so surrendered or transferred, and shall become due and payable immediately. Such lien shall be in preference to all other claims against such property.

The County does not specifically contend that its lien is not a "statutory lien" within the meaning of the bankruptcy law, but does argue that its lien does not "fall within the purview of lien avoidance in 11 U.S.C. § 545." In support of this contention, the County relies primarily on 15 U.S.C. § 656 and the Supreme Court's decision in *California State Bd. of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 109 S.Ct. 2228, 104 L.Ed.2d 910 (1989). The court will address the application of 15 U.S.C. § 656 later in this opinion. The County's reliance on *Sierra Summit* is misplaced. In *Sierra Summit* the Supreme Court held that neither the doctrine of intergovernmental tax immunity nor 28 U.S.C. § 960 proscribed the imposition of a state tax on a federal bankruptcy liquidation sale. While some of the Court's statements in *Sierra Summit* might generally be viewed as supportive of the County's position, the analogy the County attempts to draw between that case and the case at bar is tenuous at best.

In *In re Knights*, Judge Kelly concluded that the debtor's filing of the bankruptcy petition was a voluntary surrender of personal property to another within the meaning of K.S.A. 79–2020, thereby authorizing the trustee to sell or otherwise dispose of the property. 98 B.R. at 556. "At the time the property was 'surrendered,' the property tax had been assessed, but was unpaid." *Id.* The court found that by the operation of K.S.A. 79–2020, "the County's lien had preference over all claims against the property, including the perfected security interest of the SBA." *Id.*

In short, the County's lien in this case arose when the debtor's property was transferred to the trustee upon the filing of the bankruptcy petition. The court concludes that the County's lien arising under K.S.A. 79–2020 is, by definition, a "statutory lien" within the meaning of the Bankruptcy Code. The tax lien arose automatically and was not based upon an agreement to give a lien. The court also concludes that the trustee may avoid that lien under 11 U.S.C. § 545(1)(A). *See 4 Collier on Bankruptcy* ¶ 545.01[1].

Does 15 U.S.C. § 646 control over 11 U.S.C. § 545?

■ This issue is in essence the heart of this appeal. The County contends that the bankruptcy court erred in its analysis of the 15 U.S.C. § 646 and 11 U.S.C. § 545. The County contends that the rules of statutory construction compel a finding that the trustee may not avoid its tax lien. The Country contends that 15 U.S.C. § 646, a specific statute, controls over the more general statute 11 U.S.C. § 545. The County also contends that congressional intent is violated by the bankruptcy court's holding.

15 U.S.C. § 646 provides:

Any interest held by the [Small Business] Administration in property, as security for a loan, shall be subordinate to any lien on such property for taxes due on the property to a State, or political subdivision thereof, in any case where such lien would, under applicable State law, be superior to such interest if such interest

were held by any party other than the United States.

The legislative history of the statute indicates that it is generally "designed to place SBA claims against the assets of small-business borrowers in a subordinate position to claims of state and local tax liens against such assets." S.Rep. No. 1714, 85th Cong., 2d Sess., *reprinted in* 1958 U.S.Code Cong. & Ad.News, 3071, 3080. *See City of Sherman v. United States*, 400 F.2d 373 (5th Cir.1968) ("The purpose of Congress in enacting this section was to place the SBA's security claims against property in the several states upon the same level as those held by private parties in these states."); *see generally United States v. Tipton*, 898 F.2d 770 (10th cir. 1990).

In resolving this issue, the bankruptcy court commented and concluded:

This statute sets forth the priority scheme between the SBA's security interest in property and a state's tax lien on the same property. Pursuant to 15 U.S.C. § 646 a SBA security interest is subordinate to a state tax lien. The subject matter of 11 U.S.C. § 545 is the trustee's ability to avoid certain statutory liens. A trustee may avoid any statutory lien on property that first attaches upon the filing of the bankruptcy. Simply put, 15 U.S.C. § 646 does not supersede 11 U.S.C. § 545 because the two statutes do not conflict. One concerns lien priorities; the other sets forth avoidance powers.

Neither party, nor the bankruptcy court, has identified any case addressing the precise issue presented by this case. This court, in its independent research of this issue, was also unable to find any authority squarely resolving this case. Contrary to the County's assertion, *In re Brown*, 79 B.R. 789 (Bkrtcy.N.D.Ill.1987), is not directly on point. In that case the debtor entered an agreement, in conjunction with the National Health Service Corps (NHSC) scholarship program, whereby the Government would pay for his medical school education in exchange for his agreement to serve for two years in government service.

Prior to completing his medical degree, the debtor withdrew from medical school. After the passage of approximately four years from the date of his withdrawal from medical school, the debtor sought to discharge this debt in bankruptcy. The Government filed a complaint to determine dischargeability alleging that pursuant to 42 U.S.C. § 254*o*(c)(3) the debtor's obligation to repay his NHSC scholarship was a nondischargeable debt. The debtor filed an answer, contending that repaying the debt would impose an undue hardship on himself and his family.

The bankruptcy court concluded that the debtor could not discharge the NHSC debt. Although the debtor would ordinarily be entitled to discharge under the Bankruptcy Code if he could prove that repayment of the scholarship would work an undue hardship, the NHSC provision (42 U.S.C. § 245*o*(c)(3)) absolutely prohibited the discharge of the obligation. The bankruptcy court concluded:

> The conflict is irreconcilable. 42 U.S.C. § 245*o*(c)(3), being the more specific statute, dealing solely with the dischargeability of National Health Service Corps scholarship repayments, therefore controls the discharge of the debtor's loan.

79 B.R. at 792.

The case at bar differs in one significant aspect: 11 U.S.C. § 545 and 15 U.S.C. § 646 do not conflict. In *In re Brown*, the two statutes in question were directly in conflict and were in fact irreconcilable. In the case at bar, as the bankruptcy court correctly concluded, the two statutes are not in conflict.

The County contends that allowing the trustee to avoid its lien thwarts the purpose of 15 U.S.C. § 646. Although Congress clearly subordinated SBA's lien to the County's lien in terms of priority, 15 U.S.C. § 646 does not address the issue of lien avoidance.[1] As it is not for this court to rewrite the statute for Congress to specifically address the issue of lien avoidance, the trustee may avoid the County's lien. Pursuant to 11 U.S.C. § 551,[2] the trustee may preserve the lien for the benefit of the estate. *See In re Coal–X Ltd., "76"*, 103 B.R. 276, 280 (D. Utah 1986), *rev'd in part on other grounds, In re Coal–X Ltd., "76"*, 881 F.2d 865 (10th Cir.1989) (discussing the operation of 11 U.S.C. § 551). *See generally In re Van De Kamp's Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir.1990) ("Neither the text of section 551 nor its legislative history gives any indication that the court should engage in an examination of how competing interests might have fared in a prepetition state court action."); 4 *Collier on Bankruptcy*, ¶ 551.01, 551.02.

IT IS THEREFORE ORDERED that the order of the bankruptcy court is affirmed.

---

1. In terms of priority and pursuant to 15 U.S.C. § 646, the SBA's security interest is subordinated to the County's lien.

2. 11 U.S.C. § 551 provides:
   Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title [11 USCS § 522, 544, 545, 547, 548, 549, or 724(a) ], or any lien void under section 506(d) of this title [11 USCS § 506(d) ], is preserved for the benefit of the estate but only with respect to property of the estate.